**Sandra L. ELEY, Plaintiff,**

v.

**The BOEING COMPANY and King County Medical Blue Shield, Defendants.**

**No. C89–207R.**

United States District Court,
W.D. Washington,
at Seattle.

July 18, 1990.

Lawrence L. Shafer, Shafer, Moen & Bryan, P.S., Seattle, Wash., for plaintiff.

Bruce D. Corker, Rosemary Daszkiewicz, Perkins Coie, John Hayes Pierce, King County Medical Blue Shield, Gen. Counsel, Seattle, Wash., for defendants.

## ORDER GRANTING RENEWED SUMMARY JUDGMENT MOTION TO DISMISS

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on defendant's renewed motion for summary judgment. Having reviewed the motion, together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

Defendant Boeing has resubmitted a summary judgment motion to dismiss plaintiff Sandra Eley's claims for denial of medical benefits. On January 9, 1990, this court issued an order denying both parties' motions for summary judgment, finding that based on the evidence presented at that time, there was a question of fact as to the definition of "diagnostic test", and therefore the issue was inappropriate for summary judgment.

Boeing now submits five declarations from medical personnel and employee benefits personnel[1], in an attempt to provide sufficient evidence to succeed on summary judgment. Plaintiff opposes the motion, arguing that nothing new is truly presented in this renewed motion, and that summary judgment remains inappropriate for resolving this dispute.

## I. FACTUAL BACKGROUND

Plaintiff Sandra L. Eley, an employee of defendant The Boeing Company ("Boeing"), sought reimbursement under Boeing's medical benefits plan (the "Plan") for certain medical expenses. Coverage was denied, based on Boeing's decision that Eley's condition preexisted her eligibility under the Plan. Eley subsequently brought this action, claiming breach of contract, breach of good faith obligation and violation of Washington's Consumer Protection Act. The court subsequently dismissed her state law claims, finding that they were preempted under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Her remaining claim is for entitlement to benefits under an employee welfare benefit plan under ERISA.

Eley began working for Boeing on January 21, 1988. As a Boeing employee, she became eligible for health benefits under the Plan on the first day of the month following one full month of employment, March 1, 1988.

---

**1.** Boeing submits declarations from Robert W. Hoffman, M.D., Medical Director for King County Medical Blue Shield ("KCMBS"); Stanley D. Pomarantz, M.D., Assistant Medical Director for KCMBS; Nancy B. Cannon, Employee Benefits Manager for Boeing; Terrence H. Gleason, M.D., Pathologist; and Glenn L. Connelly, Employee Benefits Consultant.

On February 2, 1988, Eley visited Dr. George T. Fairfax for a routine gynecological examination. As part of that examination, Dr. Fairfax performed a PAP test which resulted in a finding of Class II-atypical cells. A Class II finding suggests that an abnormality, such as cervical cancer, may be present.

On February 16, 1988 Eley was notified of the result of the PAP smear, and an appointment was made for March 2, 1988 to perform additional tests to determine whether cancer was present. On March 2, 1988 Dr. Fairfax performed a biopsy of Eley's cervix which confirmed the presence of cervical cancer. Surgery was performed on April 7, 1988.

After her surgery, Eley submitted a claim for coverage under the Plan. That claim was denied because King County Medical Blue Shield ("KCMBS"), the administrator of Boeing's Plan, determined that Eley's cancer was a "preexisting condition." [2] Expenses connected with a preexisting condition are not covered during the first twelve months of an employee's coverage.

KCMBS based its determination on the fact that Eley had a PAP test on February 2, 1988, approximately one month before the coverage became effective. KCMBS has determined PAP tests to be "diagnostic tests" under the Plan.

Eley sought a review of the determination by letter dated August 11, 1988. In a September 22, 1988 letter, KCMBS informed Eley that it affirmed the earlier decision. KCMBS explained:

> The preexisting determination has been extensively reviewed by our Medical Department and it is their decision that a PAP smear does constitute a diagnostic test. Based upon this decision, the previous determination of the preexisting condition for this patient is correct.

Eley subsequently filed this suit on January 13, 1989.

Eley's final administrative action was her July 10, 1989 request for the Boeing Welfare Benefit Plan Committee to review the denial of her claim. She provided the Committee with additional documentation in support of her request for coverage, including declarations from two doctors stating they did not consider routine PAP smears to be "diagnostic tests." The Committee asked KCMBS to review and comment on the declarations, and to state the basis for KCMBS' prior denial of Eley's claims. KCMBS responded to the Committee in an August 28, 1989 letter, where it concluded that it was not persuaded by the declarations, and was standing by its prior determination.

The Committee reviewed the language of the Plan and documentation provided by Eley and KCMBS. It concluded on September 25, 1989 that KCMBS used appropriate administrative procedures in review of the claim, and appropriately interpreted the Plan provisions relating to preexisting conditions. Therefore, it concluded that Eley's claim was properly denied.

Plaintiff brought a summary judgment motion before this court for review of Boeing's denial of her claim. Boeing cross-moved for summary judgment. The court denied both motions, stating that based on the evidence before it at the time, there was a question of material fact as to whether or not a PAP smear was a "diagnostic test." [3] Boeing now renews its mo-

---

**2.** The Plan defines "preexisting condition" as "any illness, injury or other condition, whether or not diagnosed, for which a person has received medical treatment, consultation, a diagnostic test or prescribed medicines during the three-month period before his or her coverage becomes effective."

**3.** Specifically, the court stated: "The parties have spent a great deal of effort briefing the question of the appropriate standard of review for the court to apply in this case. Regardless of whether the court ultimately uses the arbi-

trary and capricious standard of review, or decides to review the case *de novo*, further evidence is required on the factual question of what constitutes a 'diagnostic test.' If defendants do not counter with sufficient medical evidence to support their determination, then it is possible for this court to find their determination to be in error under either standard of review.

The court finds that the plaintiff has succeeded in raising a genuine issue of material fact sufficient to withstand the summary judgment motion. Further evaluation of the merits of the

tion for summary judgment of dismissal as a matter of law, appending additional affidavits for the court's review.

## II. DISCUSSION

### A. Summary Judgment Standard

A grant of summary judgment is appropriate if it appears, after viewing the evidence in the light most favorable to the opposing party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.*, 809 F.2d 626, 630–31 (9th Cir.1987); *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir. 1985).

### B. ERISA Standard of Review

Prior to February 21, 1989, virtually all claims arising under ERISA § 502(a)(1)(B) in this circuit were decided under an arbitrary and capricious standard of review. *See, e.g., Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302 (9th Cir.1986). On February 21, 1989, the United States Supreme Court issued its notable decision in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), which held that a *de novo* review was proper in some circumstances.

In that case, Bruch brought suit alleging an unfair denial of severance benefits after Firestone sold the plant in which he worked. Bruch disputed Firestone's interpretation of its severance provisions which denied benefits to employees who continued to work for the successor employer. Firestone argued that its interpretation should be reviewed under an arbitrary and capricious standard. It based this argument in large part on the fact that the interpretation of ERISA plans had uniformly been reviewed under the arbitrary and capricious standard developed under a pro-

vision of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 186(c).

Rather than applying the analysis developed under the LMRA, the Supreme Court instead adopted "established principles of trust law." *Bruch*, 109 S.Ct. at 956. Under those principles, the Court held that while issues of interpretation of some plans would continue to be reviewed under an abuse of discretion standard, such issues with respect to other plans are to receive *de novo* judicial review. The standard of review would be determined on the basis of the plan language itself.

> Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard *unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.*

109 S.Ct. at 956 (emphasis added).

The Court noted that applying a *de novo* standard of review, where discretionary authority to construe the plan had not been retained, was consistent with the judicial interpretation of employee benefit plans prior to the enactment of ERISA. This prior interpretation was similar to any other contract claim, where the court would look to the terms of the plan and other manifestations of the parties' intent.

The court went on to indicate that, where discretion has been granted to the plan's fiduciaries to construe plan terms or to determine eligibility for benefits, a deferential standard is appropriate, but *not* under an "arbitrary and capricious test."[4] In the place of the arbitrary and capricious standard, the Court indicates that "abuse of discretion," a trust law concept, is the appropriate standard of review.

Following *Bruch*, the Ninth Circuit also articulated that abuse of discretion is the

---

case is stayed until the necessary factual evidence is before the court." Order Denying Cross–Motions for Summary Judgment at 5–6.

**4.** The court clearly states that: "LMRA principles offer no support for the adoption of the

arbitrary and capricious standard insofar as § 1132(a)(1)(B) is concerned," and "... we cannot ascribe to Congress any acquiescence in the arbitrary and capricious standard." 109 S.Ct. at 956.

appropriate standard if the language of the plan reserves discretion to the plan sponsor or administrator:

> Where, as here, an ERISA trust instrument vests discretionary power in the trustees to construe and administer the trust's terms, we review the trustees' interpretations of those terms in a 29 U.S.C. § 1132(a)(1)(B) benefits denial suit for abuse of discretion. The trustees abuse their discretion if they render decisions without any explanation, or construe provisions of a plan in a way that clearly conflicts with the plain language of the plan.

*Johnson v. Trustees of the Western Conf. of Teamsters Pension Trust Fund,* 879 F.2d 651, 654 (9th Cir.1989).

■ The court must now determine whether Boeing's Plan contains the appropriate language granting the company full discretion with respect to the Plan's interpretation and administration, such that it falls into the category of plans reviewed for abuse of discretion rather than *de novo*.

The defendants have offered, and plaintiff has not challenged, that the language within Boeing's Plan is similar to language other courts have found granting broad discretion to a plan sponsor or administrator. Since *Bruch,* these courts have held that a broad grant of authority to construe plan language similar to that given to Boeing does not require application of *de novo* review. *See, Guy v. Southeastern Iron Workers' Welfare Fund,* 877 F.2d 37 (11th Cir.1989); *Batchelor v. Intnat'l. Brotherhood of Electrical Workers,* 877 F.2d 441 (5th Cir.1989); *Lowry v. Bankers Life and Casualty Retirement Plan,* 871 F.2d 522 (5th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 152, 107 L.Ed.2d 111; *DeNobel v. Vitro Corp.,* 885 F.2d 1180 (4th Cir.1989).

Boeing argues that there are three provisions vesting Boeing with discretionary authority to construe the Plan. First, Boeing alone determines eligibility, unless Boeing and KCMBS adopt other procedures. See Administrative Services Agreement at 3.2.-1. Second, the Plan gives Boeing the pow-

er to make the final decisions on all claims determinations. See Administrative Service Agreement at 3.4.1. Third, the Plan expressly grants Boeing full authority and responsibility for all aspects of the Plan. See Administrative Services Agreement at 3.4.4.

These powers granted to Boeing under the Plan satisfy the *Bruch* requirements that the plan "give the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Bruch,* 109 S.Ct. at 956. Because the Plan grants full discretion to Boeing, this court must review its decision for abuse of discretion.

### C. "Abuse of Discretion" Analysis

■ The post-*Bruch* court decisions have failed to develop a stringent definition of what constitutes abuse of discretion by a plan administrator or trustee, although many courts continue to inter-change it with the former, highly-deferential, arbitrary and capricious standard.[5] The Ninth Circuit has said only that, "trustees abuse their discretion if they render decisions without any explanation, or construe provisions of the plan in a way that clearly conflicts with the plain language of the plan." *Johnson, supra* at 654.

In *Bruch,* the Supreme Court pointed to trust law as the basis from which to evaluate these types of ERISA disputes. Trust law dictates that, as a general rule, a trustee will not be deemed to have abused his discretion "so long as he acts not only in good faith and from proper motives, but also within the bounds of reasonable judgment." *See,* III A. Scott & W. Fratcher, *The Law of Trusts,* § 187 at 14. The elements of good faith, proper motive, and reasonability all play a part in evaluating a trustee's discretion.

■ In the case at hand, Boeing based its decision to deny benefits to Eley on the "preexisting condition" exclusion contained in the Plan. While the parties disagree as to whether a routine PAP smear is a "diagnostic test" within the meaning of that

---

**5.** *See, e.g., Jader v. Principle Mutual Life Insurance Co.,* 723 F.Supp. 1338 (D.C.Minn.1989); *Guy v. Southeastern Iron Workers' Welfare*

*Fund, supra; Davis v. Kentucky Finance Co. Retirement Plan,* 887 F.2d 689 (6th Cir.1989).

exclusion, Boeing's interpretation cannot be said to be totally unreasonable. The court finds that the term "diagnostic test" is ambiguous. However, as established in the declarations from medical professionals submitted with defendant's motion, the definition of "diagnostic test" is such that one could categorize a PAP smear as fitting within that group of tests designed to "recognize the possible presence of a disease from its symptoms," despite the test being inconclusive. *See* Declaration of Robert F. Hoffman at 4.

While the court may disagree with the conclusion of Boeing in this situation, it appears there is sufficient evidence that Boeing's decision to deny Eley's benefits was not unreasonable.[6] Boeing has rendered its decision with an explanation, and the decision does not "clearly conflict with the plain language of the plan." *Johnson*, 879 F.2d at 654. The result is that Boeing's decision must be upheld by this court.

THEREFORE, defendant's motion for summary judgment of dismissal is GRANTED.

---

**6.** No claims of bad faith or improper motives on the part of Boeing have been raised in these proceedings, therefore the court declines to speculate on those elements of abuse of discretion.