**Sandra L. ELEY, Plaintiff–Appellant,**

**v.**

**BOEING COMPANY; King County Medical Blue Shield, Defendant–Appellee.**

**No. 90–35756.**

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 11, 1991.[*]

Decided Sept. 19, 1991.

---

[*] The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Lawrence L. Shafer, Langley, Wash., for plaintiff-appellant.

Bruce D. Corker, Rebecca Dean, Perkins Coie, Seattle, Wash., for defendant-appellee.

Before WRIGHT, FARRIS and TROTT, Circuit Judges.

FARRIS, Circuit Judge:

## OVERVIEW

Sandra Eley appeals the district court's summary judgment dismissal of her action for medical benefits against the Boeing Company and King County Medical Blue Shield pursuant to 29 U.S.C. § 1132 of ERISA. 742 F.Supp. 566. We affirm.

## ISSUES

(1) Whether the district court erred in reviewing the plan administrator's interpretation of a plan term for abuse of discretion.

(2) Was the plan administrator's interpretation of "diagnostic test" an abuse of discretion?

## FACTS

Boeing sponsors and funds an ERISA employee welfare benefit plan. The Welfare Benefit Plans Committee is the plan administrator. Boeing employs King County Medical Blue Shield as contract administrator. The plan is provided pursuant to collective bargaining agreements between Boeing and its salaried employees.

Shortly before she became covered under Boeing's health plan, Eley had a Pap test which resulted in a Class II-atypical finding. A Class–II result indicates that an abnormality, such as cervical cancer, may be present. Shortly after she became covered under the plan, Eley had a biopsy which indicated cervical cancer. She thereafter had a hysterectomy.

After her surgery, Eley submitted a claim to Blue Shield for reimbursement. Blue Shield denied the claim because it determined that the cancer was an illness for which Eley had received a diagnostic test (the Pap test) during the three-month period before her coverage became effective. Eley claimed that a Pap test was not a diagnostic test. Blue Shield reviewed the issue with its medical staff and reaffirmed its decision. Eley then appealed to Boeing's Welfare Benefit Plans Committee,

submitting declarations of two physicians who stated that Pap tests were not diagnostic tests. Blue Shield submitted the opinion of its medical staff and definitions from Webster's Dictionary and the Merck Manual of Diagnosis and Therapy. The Committee concluded that Blue Shield had used proper procedures in reviewing Eley's claim and that it had properly interpreted the plan provision.

Eley brought suit in the district court, which granted summary judgment for the defendant. It found no abuse of discretion in the Committee's interpretation of the plan.

## ·DISCUSSION

### I. Standard of Review of Administrator's Determination

■ Eley argues that the district court erred in reviewing the administrator's determination for abuse of discretion rather than de novo. We hold that the district court applied the proper standard of review.

■ In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), the Supreme Court held that denials of benefits were to be reviewed under a de novo standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." If the benefit plan gives the administrator discretionary authority, review for abuse of discretion is required. *See id.* at 114–15, 109 S.Ct. at 956 (stating that the Court could not con-

clude that Congress intended that arbitrary and capricious review be employed and using term "abuse of discretion" to describe appropriate standard of review); *Jones v. Laborers Health & Welfare Trust Fund,* 906 F.2d 480, 481 (9th Cir.1990) (applying abuse of discretion standard).[1]

The provisions of the Boeing plan[2] are comparable to plan provisions we have previously held to confer discretion. *See, e.g., Dytrt v. Mountain State Tel. & Tel. Co.,* 921 F.2d 889, 894 (9th Cir.1990) (plan administrator given authority " 'to determine eligibility for benefits or to construe the terms of the plan' " (quoting *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956)); *Jones,* 906 F.2d at 481 ("Board of Trustees shall have power . . . to construe the provisions of this Trust Agreement and the Plan, and any such construction adopted by the Board in good faith shall be binding."); *Batchelor v. International Bhd. of Elec. Workers Local 861 Pension & Retirement Fund,* 877 F.2d 441, 442–43 (5th Cir.1989) (plan administrator given "full and exclusive authority to determine all questions of coverage and eligibility"). *See also Boyd v. Trustees of United Mine Workers Health & Retirement Funds,* 873 F.2d 57, 59 (4th Cir.1989) (trustee given authority to make "full and final determination as to all issues concerning eligibility for benefits" and to promulgate rules). We hold that the plan gives "the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956.

■ The *Bruch* Court also stated that if a plan bestows discretionary authority upon an administrator who is operating

**1.** In *Madden v. ITT Long Term Disability Plan,* 914 F.2d 1279, 1283–84 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991), a case decided after *Jones,* we used the term "arbitrary and capricious" to describe our deferential review of the administrator's interpretation. However, because *Madden*'s review was in fact consistent with the abuse of discretion test, it is not inconsistent with our holding in *Jones. See Madden,* 914 F.2d at 1285 (requiring that "substantial evidence" support the trustee's decision).

**2.** The Company shall determine the eligibility of a person for benefits under the plan, pursu-

ant to the terms and conditions specified in Appendix A to this Agreement unless other procedures are agreed to by the Company and the service representative.
CR 11, Exh. B at ¶ 3.2.1.
 The Service Representative will provide to the company, upon request, copies of the claim records of rejected claims, and will abide by the Company's decision thereon.
*Id.* at ¶ 3.4.1.
 The Company retains final authority and responsibility for the Plan and its operation.
*Id.* at ¶ 3.4.4.

under a conflict of interest, the conflict must be considered in determining whether an abuse of discretion has occurred. *Id.* at 115, 109 S.Ct. at 956 (quoting Restatement (Second) of Trusts § 187, Comment d (1959)). We have held that if the employer is the administrator, a conflict ordinarily exists. *Dytrt,* 921 F.2d at 894 & n. 4 (quoting *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956). In determining that Boeing did not abuse its discretion, the district court did not consider Boeing's role as both plan administrator and employer, apparently because Eley had not claimed that Boeing had acted in bad faith or with an improper motive. Boeing argues that even if the district court erred in requiring an allegation of improper motive, Blue Shield's role as contract administrator mitigates any potential conflict of interest. Blue shield made the initial plan interpretation and uses the same definition for other employer plans. Boeing also notes that collective bargaining produced the language of the plan. We need not decide whether the district court erred in declining to weigh Boeing's dual role. Even if Boeing has an interest in broadly construing the preexisting condition exclusion, Boeing's interpretation of the term is consistent with the plain language of the plan.

## II. *Boeing's Determination that a Pap Test Is a Diagnostic Test*

■ The plan excludes "expenses during the first twelve months of a person's coverage to the extent that they are in connection with a preexisting condition." A preexisting condition is defined as "any illness ... whether or not diagnosed, for which a person has received medical treatment, consultation, a diagnostic test or prescribed medicines during the three-month period before his or her coverage becomes effective." Blue Shield interpreted "diagnostic test" to include Pap tests and therefore found that expenses related to Eley's cervical cancer surgery were excluded from coverage.

"[T]rustees abuse their discretion if they render decisions without any explanation, or construe provisions of the plan in a way that clearly conflicts with the plain lan-

guage of the plan." *Johnson v. Trustees of the Western Conf. of Teamsters Pension Trust Fund,* 879 F.2d 651, 654 (9th Cir.1989). Boeing gave an explanation. Eley must therefore show that a genuine issue of material fact exists as to whether Boeing's interpretation of the term "diagnostic test" clearly conflicts with the plain language of the plan.

Eley failed to meet her burden under the *Johnson* test. We reject her assertion that the English language meaning of "diagnostic" supports her interpretation of the term rather than Boeing's. We recognize the correctness of her position that screening tests like the Pap test indicate the *absence* of disease while a diagnosis is defined as "the art or act of recognizing the *presence* of disease." *Webster's New International Dictionary* (2d ed. 1950) (emphasis added). Screening tests also recognize, however, the *possible* presence of disease, therefore fitting within the definition of diagnosis. Although a layperson would probably not consider herself "diagnosed" with cervical cancer upon receiving a Class II–atypical finding from her Pap test, the plan specifically excludes from coverage conditions *not diagnosed* for which a "diagnostic test" has been given. Boeing's affidavits that a Pap test is referred to as a diagnostic test by at least some of the medical academic community are not refuted. We cannot say that the interpretation given to "diagnostic test" by Blue Shield and approved by Boeing clearly conflicts with the plain language of the plan. *Cf. Jones,* 906 F.2d at 481–82 (treatment of disputed efficacy properly excluded by plan administrator under "not reasonably necessary" exclusion).

■ *Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 581, 112 L.Ed.2d 587 (1991), does not alter our result. In an alternate holding, the *Kunin* court held that, if a term in an insurance contract is ambiguous, that term must be construed against the insurer even if the insurance contract is an "employee welfare benefit plan" governed by ERISA and grants discretion to the administrator. *Id.*

at 539. *See also Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*, 936 F.2d 98, 107 (2d Cir.1991) (applying *contra proferentem* rule to ERISA insurance plan subject to de novo review). *Contra Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150, 153–54 & n. 2 (8th Cir.1990) (rejecting *Kunin*), *cert. denied*, — U.S. —, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991).

This case differs significantly from *Kunin* in two respects. The present plan, unlike that in *Kunin*, is the result of a collective bargaining agreement. *See id.* at 540 (distinguishing earlier Ninth Circuit cases holding *contra proferentem* inapplicable to ERISA cases where the ambiguous policy language was a result of a collective bargaining agreement). Secondly, in contrast to the insurance policy purchased by the employer in *Kunin*, the Boeing plan is self-funded. Although *contra proferentem* is strictly applied in the interpretation of insurance contracts, it is not automatically or universally applied to other contracts, especially those that result from arms-length bargaining by parties of equal power, as in the case of collective bargaining agreements. *See Taylor v. Continental Group Change in Control Severance Pay Plan*, 933 F.2d 1227, 1233–34 (3rd Cir. 1991) (distinguishing *Kunin* and holding that in de novo review of the interpretation of a self-funded plan, it was error to grant summary judgment on basis of the *contra proferentem* rule if the plan provisions at issue were ambiguous).

The parties shall bear their own costs.

AFFIRMED.