12 F.3d 1107
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Enriqueto MARTE, Plaintiff-Appellee,
v.
CHEVRON CORPORATION LONG-TERM DISABILITY PLAN; Chevron
Corporation Long-Term Disability Plan
Organization, a Delaware corporation;
and Chevron Corporation,
Defendant-Appellants.
Daniel Aruta, Earl Kauka, and Jacinto Almeria, Plaintiff
Intervenors-Appellees.
 No. 92-15798.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 7, 1993.
Decided Nov. 30, 1993.
 
 Before: THOMPSON and O'SCANNLAIN, Circuit Judges, and NIELSEN, District Judge.[1]
 MEMORANDUM[2]
 OVERVIEW
 Chevron Corporation Long Term Disability Plan [Chevron] appeals a district court grant of summary judgment for plaintiff, Enriqueto Marte, and plaintiff-intervenors, Daniel Aruta, Earl Kauka and Jacinto Almeria. The district court held that Chevron as administrator of the long term disability [LTD] plan under calculated the level of benefits due the plaintiffs [hereinafter Marte]. Chevron's appeal claims 1) the district court applied an incorrect level of review, de novo instead of abuse of discretion; and 2) the district court misinterpreted the phrase "straight time wages" to include wages for hours worked in excess of 40 hours per week. We agree and reverse.
 STATEMENT OF THE CASE
 A. Statement of Facts
 The four seamen appellees worked as crew members on Chevron oil tankers. While on the tankers for one to three months at a time, their schedules varied day to day, they worked as needed, regularly greatly in excess of 40 hours per week. This work period would then be followed by a month at home during which they were not required to work yet drew a monthly wage which paid as if they had worked 40 hours per week.
 1. The Plan
 There are two LTD plans at issue. Appellees Almeria and Aruta were injured before 1986, when the 1981 LTD plan was in effect. Appellees Marte and Kauka were injured when the 1986 plan was in effect. The 1981 and 1986 plans conferred substantially the same benefits. However, there is a procedural difference as the 1981 plan provided that an employee's request for review of a benefits denial would be submitted to a three-person review panel. The 1986 plan, on the other hand, provided that a single claims reviewer would decide all appeals.
 Until 1986, the plan was entirely funded by employee contributions and these contributions were calculated on an employee's 40 hour work week. Thereafter, Chevron funded the plan for employee earnings up to $25,000. If an employee's earnings, as defined by the plan, exceeded $25,000, the employee could self-fund the excess. Marte and Kauka both opted to self-fund. When calculating the premiums owed by an employee, Chevron never included overtime earnings. Further, since Marte's and Kauka's pay excluding overtime never exceeded $25,000, no deductions were taken from their pay checks after 1986, even though their gross pay was far in excess of $25,000.
 a. Benefits
 The plan insures a disabled employee will receive a monthly plan benefit in the amount of 60% of the employee's monthly "earnings" immediately prior to the commencement of a disability.[3] The plan defines earnings as "the straight time wages or salary payable to an employee for the regular work schedule." The definition of "regular work schedule" in turn is defined as "the continually recurring pattern of scheduled work established and changed as necessary by the Corporation for a job in each work week or period of work weeks to meet operating needs." Upon being eligible for LTD benefits, Chevron awarded Marte 60% of his pay based on a 40 hour work week. Marte appealed and requested 60% of his total pay including overtime wages. The plan's reviewer affirmed the initial determination. After unsuccessfully completing the appeals process, Marte initiated this federal action.
 b. Administrative provisions.
 The plan provisions directing administration and operation provides that the administrator "shall make such rules, regulations, interpretations and computations and shall take such other action to administer the plan as it may deem appropriate." It was the plan administrator's duty to estimate the level of contributions to be made to the plan by the corporation and its members. At no time did the contributions requested by the plan cover amounts earned during overtime work.
 2. The anomaly.
 The plan has indemnification agreements with Connecticut General Life Insurance Company [CIGNA]. In 1988, Rolando Gerbacio applied for LTD benefits and was informed that the benefits were based on his pay excluding all overtime hours. When Mr. Gerbacio appealed the amount of his benefits, CIGNA assumed that since it had financial responsibility, it should serve as the appeals panel. CIGNA decided that Mr. Gerbacio's benefit should include his overtime hours, over the disagreement of the plan administrator. Then CIGNA and Chevron, prior to Marte's appeal, decided that the plan administrator had at all times the duty to decide all appeals.
 B. Proceedings Below
 The district court held that the standard of review was de novo because it found the plan did not confer discretionary powers upon the administrator. The court held that because there was no adjudicative authority, the administrator's decision involved only an application of the plan language, a process the court felt was not discretionary in nature.
 C. Discussion
 Jurisdiction is proper under ERISA, 29 U.S.C. Sec. 1132.
 1. Standard of Review.
 A district court's grant of summary judgment is reviewed de novo. Dytrt v. Mountain State Tel & Tel Co., 921 F.2d 889, 893 (9th Cir.1990). However, this court applies an abuse of discretion standard when reviewing the action of an ERISA plan administrator if the plan confers "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). In so deciding, the Supreme Court looked to the principles of trust law and held that "a deferential standard of review [is] appropriate when a trustee exercises discretionary powers." Id. at 111.
 By its provision that the plan administrator "shall make such rules, regulations, and interpretations ... to administer the plan as it may deem appropriate," the plan confers discretionary authority upon the administrator to construe the terms of the plan. Though it is true that the plan language does not confer discretionary authority on the administrator for all plan activities, such is not necessary for this decision. The Supreme Court in Firestone relied upon the Restatement Statement 2d of Trusts Sec. 187 for its decision. Section 187 provides that when discretion is "conferred upon the trustee with respect to the exercise of a power, [then] its exercise is not subject to control by the court." Id. A reasonable inference from use of the phrase "exercise of a power" is that some powers of a trustee could be discretionary and subject to abuse of discretion review while others would be subject to de novo review because the power is non-discretionary.
 As the district court noted, this case turned on the administrator's interpretation of the plan's language and "involved only an application of [that] plan['s] language." Though the plan does not confer discretionary authority upon the administrator as to all matters, it does confer enough to merit the abuse of discretion standard of review for purposes of this appeal.
 Marte argues the plan's grant of power to interpret is not synonymous with a grant of discretion, citing Firestone. Though Firestone does hold that interpretation of plan terms is not an inherently discretionary function, 489 U.S. at 112, Marte takes this language out of context. Just prior to this holding, the Court noted that the plan at issue lacked language which would merit an arbitrary and capricious standard. Id. In contrast, Chevron's plan language supports an arbitrary and capricious standard as it clearly vests discretionary authority in the administrator to make interpretations of plan language.
 Marte also argues that there is no specific language to show that the administrator has an exclusive right to make interpretations or that the decisions shall be final, conclusive and binding. However, no case cited by Marte requires special "magic words." A persuasive case to the contrary and on point is De Nobel v. Vitro Corp., 885 F.2d 1180, 1187 (4th Cir.1989), wherein the court held "[t]here are obviously no magic words required to trigger the application of one or another standard of judicial review. In this setting, it instead need only appear on the face of the plan documents that the fiduciary has been 'given [the] power to construe disputed or doubtful terms' ... in which case 'the trustee's interpretation will not be disturbed if reasonable.' " Id. quoting Firestone, 489 U.S. at 111.
 Plaintiffs Almeria and Aruta, both injured prior to 1986, argue de novo review is required because Chevron breached the plan terms by utilizing a single in-house reviewer instead of the three person panel outlined in the 1981 plan. Plaintiffs must fail for any of three reasons. First, the result should not have been different even if a panel made the decision. The single reviewer was simply applying the plan language as previously interpreted by the administrator. This is evidenced by the fact that the Chevron administrator from the very beginning assessed employees a premium amount based on 60% of wages earned for a 40 hour work week. Though plaintiffs argue the assessment was incorrect and done through oversight, intention or mistake, no evidence was presented to support this allegation.
 Second, Almeria and Aruta have no substantive right to a certain plan procedure. Blau v. Del Monte Corp., 748 F.2d 1348, 1353 (9th Cir.1984); Kreutzer v. A.O. Smith Corp., 951 F.2d 739, 743 (7th Cir.1991). Third, the plaintiffs cite no authority for the proposition that a procedural breach of plan terms automatically imposes de novo review.
 2. Review of the Plan.
 As an initial matter, this court finds the language of the plan is unambiguous and that "straight time" refers to the regular 40 hour work week. Therefore a ruling for Chevron is warranted. However, even if the language were ambiguous, Chevron would still prevail.
 Under the abuse of discretion standard of review, a plan administrator's interpretation of an ambiguous term will be upheld as long as it does not conflict with the plain language of the plan. Eley v. Boeing Co., 945 F.2d 276, 279 (9th Cir.1991). Chevron has interpreted "earnings" upon which benefits are calculated, to only include wages received for a 40 hour work week. The burden is upon Marte to show that Chevron's interpretation of the term "earnings" clearly conflicts with the plain language of the plan. Id. Marte attempts to satisfy this burden by claiming the phrase "regular work schedule" is rendered superfluous within the definition of earnings when employing Chevron's interpretation. Even assuming Marte's claim as true, simply rendering a term superfluous does not raise it to the level of conflicting with the plain language of the plan.[4]
 Marte correctly points out that if an administrator "is operating under a conflict of interest, the conflict must be considered in determining whether an abuse of discretion has occurred." Eley, 945 F.2d at 278-79. Further, "if the employer is the administrator, a conflict ordinarily exists." Id. at 279. This contention does not save the day for Marte. If Chevron's interpretation of the term is consistent with the plain language of the plan, the alleged conflict is irrelevant. Id. Having already determined above that Chevron's interpretation does not conflict with the plan, this court holds that Chevron's interpretation is consistent with the plan language. Further, Chevron was not operating under a conflict of interest when it initially interpreted the benefits level. At the time Chevron initially assessed the premium, the plan was fully employee funded and Chevron did not have a vested interest when it construed the plan language. Therefore Chevron did not abuse its discretion when it limited the benefits calculation to earnings based on a 40 hour work week and excluded all overtime hours from consideration.
 Marte argues that when CIGNA awarded Gerbacio benefits based on his wages including overtime, Chevron took over the duties of claims reviewer in order to avoid the same result in the plaintiffs' cases. Marte argues this evidences an abuse of discretion because it is an inconsistent and irregular handling of claims. However, since Chevron always calculated the premiums based on a 40 hour work week wage, Chevron's action as to Marte was in keeping with the plan's original funding. Any inconsistencies and irregularities are to be found in the Gerbacio decision.
 3. Attorney's fees.
 Chevron's request for attorney's fees is denied as (1) there is no evidence of bad faith on the part of Marte for bringing this appeal; (2) Marte's ability to pay is not apparent; (3) the suit raises a significant ERISA question; and (4) Marte's position had merit. Arnold v. Arrow Transportation Co., 926 F.2d 782 (9th Cir.1991).
 CONCLUSION
 The district court erred in utilizing the de novo standard for review of this case. Under the appropriate standard of abuse of discretion, Chevron prevails. The decision below is REVERSED. This cause is REMANDED to the district court with instructions to enter summary judgment in favor of Chevron.
 REVERSED and REMANDED.
 
 
 
 [1]
 Hon. Wm. Fremming Nielsen, United States District Judge, for the Eastern District of Washington, sitting by designation
 
 
 [2]
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [3]
 The plan does not always pay the full 60% benefit, as benefits such as social security are deducted from the plan award
 
 
 [4]
 Marte is incorrect in his claim that "regular work schedule" is rendered superfluous by limiting the term "earnings" to wages paid for a 40 hour work week. The phrase "regular work schedule" is necessary in case an employee had an abnormally curtailed work schedule in the weeks preceding a disability. Marte's contention that a curtailed schedule is already covered under the plan's definition of predisability earnings is incorrect. The phrase "predisability earnings" only covers the situation when an employee worked fewer hours prior to the disability because of illness