David DAY, Plaintiff,

v.

**AT & T DISABILITY INCOME PLAN, Defendant.**

No. C 06–01740 JW.

United States District Court,
N.D. California,
San Jose Division.

June 8, 2010.

Robert Burton Nichols, Jr., Attorney at Law, San Jose, CA, for Plaintiff.

Caroline Lee Elkin, Joseph Al Latham, Jr., Stephen H. Harris, Gayle Alana Goldman, Michael S. Newman, Paul Hastings Janofsky & Walker LLP, Los Angeles, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JAMES WARE, District Judge.

Presently before the Court are the parties' Cross–Motions for Partial Summary Judgment on the Offset Issue.[1] The Court conducted a hearing on April 5, 2010. At the April 5 hearing, the Court ordered further briefing from the parties on the issue of whether the Plan language allows offset of pension benefits. Both parties timely filed their supplemental briefs.[2]

---

1. (Defendant AT & T Disability Income Plan's Motion for Summary Judgment on the Offset Issue, hereafter, "Defendant's Motion," Docket Item No. 133; Plaintiff Day's Motion for Partial Summary Judgment on the Pension Offset Issue, hereafter, "Plaintiff's Motion," Docket Item Nos. 134, 135.)

2. (Plaintiff Day's Supplemental Brief on Historical Plan Languages—MSJ on Pension Offset Issue, Docket Item No. 160; Defendant AT & T Disability Income Plan's Supplemental Brief in Support of its Motion for Summary Judgment on the Offset Issue, Docket Item No. 163.) On April 19, 2010, Plaintiff filed a Response to AT & T's Supplemental Brief on Pension Offset Issue. (hereafter, "Plaintiff's Response," Docket Item No. 164.) On April 27, 2010, Defendant filed a Motion to Strike Plaintiff Day's Response to Defendant's Supplemental Brief on Pension Offset Issue or, in the Alternative, Response to Plaintiff Day's Response on the ground that the Court only authorized each party to file one supplemental brief. (hereafter, "Defendant's Motion to Strike Response," Docket Item No. 165.) On May 10, 2010, Plaintiff filed a Notice of Recent Authority, purportedly to bring to the Court's attention a United States Supreme Court opinion, *Conkright v. Frommert*, ——

Based on the papers submitted to date and oral argument, the Court GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment.

## A. Background

A detailed outline of the factual background and procedural history of this case may be found in the Court's March 21, 2008 Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment; Denying Defendant's Motion for Summary Judgment; Remanding for Reconsideration. (hereafter, "March 21, 2008 Order," Docket Item No. 68.) The Court reviews the relevant procedural history to the extent it implicates the present Motion.

In its March 21, 2008 Order, the Court remanded the case for determination of Plaintiff's claim for short-term disability ("STD") benefits. In a Joint Case Management Statement filed on June 13, 2008, the parties represented that on remand, the Claims Administrator ("Sedgwick") awarded Plaintiff the STD benefits in question. (hereafter, "Statement," Docket Item No. 98.) In the Statement, Plaintiff sought an order declaring that he was disabled throughout the "own occupation" STD period, or alternatively (1) reinstatement of his long-term disability ("LTD") through entry of judgment without further showing; (2) a finding by the Court that he remained disabled from any occupation through entry of judgment; or (3) retention of jurisdiction and an additional remand for a determination by the Plan Administrator that he is entitled to LTD benefits through entry of Judgment. (Statement at 3.)

In a June 17, 2008 Order Staying the Case, the Court found Plaintiff's request

U.S. ——, 130 S.Ct. 1640, 176 L.Ed.2d 469 (2010), that was decided after Plaintiff filed its Response, but was cited by Defendant in its Motion to Strike that Response. (Docket Item No. 166.) On May 13, 2010, Defendant filed a Motion to Strike Plaintiff Day's Notice of Recent Authority on the ground that it constituted additional briefing on the substantive motion without leave of the Court. (hereafter, "Defendant's Motion to Strike Notice," Docket Item No. 167.)

The Court finds that Plaintiff's Response does not raise any legal arguments that were not made in its Supplemental Brief and briefing on the underlying Motions. Thus, the Response does not impact the Court's ultimate decision one way or the other. Although Defendant is correct that the Court only granted leave for each party to file one Supplemental Brief, the Court finds that its consideration of the Response does not prejudice Defendant. Accordingly, the Court DENIES Defendant's Motion to Strike Response.

As to the parties' dispute over the applicability of recent Supreme Court precedent, Defendant relies on *Conkright* for the unremarkable proposition that applying a deferential standard of review "means only that the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" 130 S.Ct. at 1651 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). Plaintiff, on the other hand, cites *Conkright* for the proposition that deference is not required where a Plan makes serial misinterpretations of the Plan. (Plaintiff's Notice at 1.) Plaintiff's contention is flawed in two respects: First, Plaintiff misreads the holding of *Conkright*. While the Court in dicta stated that in "extreme circumstances ... a trustee may be stripped of deference when he does not exercise his discretion honestly and fairly," the Court held that the Plan Administrator is not stripped of deference in interpreting the Plan simply because a previous related interpretation by the Administrator is found invalid. 130 S.Ct. at 1651. Second, even if Plaintiff's reading of *Conkright* is correct, there is no basis to find that the Claim Administrator has serially misinterpreted the Plan. To the contrary, as discussed below, the Court here finds that the Plan's interpretation of the provision at issue is reasonable. Thus, the Court finds that *Conkright* is of no assistance to Plaintiff and consideration of the case does not prejudice Defendant. Accordingly, the Court DENIES Defendant's Motion to Strike Notice.

that the Court determine whether he was entitled to LTD improper since he had not yet filed his request for LTD with the Plan Administrator. (*See* Docket Item No. 99.) Upon filing his request, Sedgwick awarded Plaintiff LTD benefits, as offset by his pension benefits. (Defendant's Motion at 2.) In a subsequent Joint Case Management Statement, Plaintiff objected to the offset of his LTD benefits. (*See* Docket Item No. 109.) In a December 9, 2008 Order following a Case Management Conference, the Court remanded to the Plan Administrator the issue of whether Plaintiff's LTD benefits should be offset by Plaintiff's pension benefits. (*See* Docket Item No. 113.) In a letter dated February 11, 2009, Sedgwick denied Plaintiff's appeal of its decision to offset his LTD benefits on the ground that such offset is permitted under the plain language of the Plan. (hereafter, "February 11, 2009 Letter," Plaintiff's Motion, Ex. 18.)

## B. *Standards*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Where the abuse of discretion standard applies in an ERISA benefits denial case, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material facts exists, do not apply." *Nolan v. Heald College*, 551 F.3d 1148, 1154 (9th Cir.2009).

## C. *Discussion*

### 1. Standard of Review

■ Defendant contends that the Court should review Sedgwick's denial of Plaintiff's claim regarding offset of benefits for abuse of discretion only. (Defendant's Motion at 7–8.) Plaintiff responds that a less deferential standard is appropriate. (Plaintiff's Motion at 22–25.)

"Where the plan vests the administrator with the discretionary authority to determine eligibility for benefits, ... a district court may review the administrator's determination only for an abuse of discretion." *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1471 (9th Cir.1993) (citing *Firestone*, 489 U.S. at 115, 109 S.Ct. 948; *Eley v. Boeing Co.*, 945 F.2d 276, 278 (9th Cir. 1991)) (abrogated on other grounds). Under this standard, the court may review only that evidence which was before the plan administrator. *Id.* The court may not disturb the administrator's decision unless the decision rendered (1) is without any explanation, *Eley*, 945 F.2d at 279, (2) conflicts with the plain language of the plan, *id.*, or (3) is based on clearly erroneous findings of fact, *Taft*, 9 F.3d at 1473.

Here, the Plan provides:

The Plan Administrator has the sole and absolute discretion to interpret the provisions of the Plan, to make findings of fact, determine the rights and status of participants and others under the Plan, and decide disputes under the Plan. To the extent permitted by law, such interpretations, findings determinations, and decisions shall be final and conclusive on all persons for all purposes of the Plan.

(Administrative Record at 995, hereafter, "AR," Docket Item No. 36.)

Further, the Plan grants to each Claims Administrator "full and exclusive authority and discretion to grant and deny claims under the Plan, including the power to

interpret the Plan and to determine the eligibility of any individual to participate in and receive benefits under the Plan." (AR at 1065.) The Claims Administrator's decisions in this regard "shall be final and conclusive and shall not be subject to further review." (*Id.*)

Plaintiff contends that Sedgwick's decision is not entitled to deference on the grounds that: (1) Sedgwick was biased; (2) Sedgwick offered inconsistent reasons for its denial; and (3) Sedgwick engaged in procedural irregularities.[3]

As an initial matter, the Court finds that Plaintiff does not present material or probative evidence to support its naked assertion that Sedgwick "worked hand in hand with AT & T on the interpretation." (*See* Plaintiff's Opposition at 12.) Plaintiff presents correspondence between counsel for the Plan Administrator and the Claims Administrator regarding Plaintiff's claim as to offset of his LTD benefits. (*See* Plaintiff's Motion, Ex. 29.) However, the referenced letter only appears to forward a letter from Plaintiff's counsel to the Claims Administrator so that it could be processed as a formal claim. There is no indication that the Plan Administrator's counsel attempted to influence the Claims Administrator's ultimate decision. Furthermore, there is no structural conflict as described by the Ninth Circuit in *Abatie v. Alta Health & Life Ins. Co.* because the Plan grants unreviewable decisionmaking authority to the Claims Administrator. 458 F.3d 955, 966–67 (9th Cir.2006) (a reviewing court must always consider the "inherent conflict that exists when a plan administrator both administers the plan and funds it"). Thus, the Court finds that there is no actual or structural bias or conflict that would justify a less deferential standard of review.

The Court does not find any evidence that Sedgwick changed its reason for applying the offset during the administrative appeal. In its February 11, 2009 letter denying Plaintiff's appeal of Sedgwick's decision to offset Plaintiff's LTD benefits, Sedgwick cited the Summary Plan Document ("SPD") provision that allows certain pension benefits to be subtracted from LTD payments. (Plaintiff's Motion, Ex. 18.) Plaintiff provides no evidence that Sedgwick ever provided any other inconsistent explanation.

Finally, the Court does not find any evidence of procedural irregularities. Plaintiff contends that his claim was unduly delayed because the Plan provided one address for appeals submissions, a second address to request Plan and SPD documents, and a third address to request the claim file. (*See* Plaintiff's Opposition at 9, 23.) In support of his contention, Plaintiff cites an ERISA regulation that obligates Plans to "establish and maintain reasonable claims procedures." 29 C.F.R. § 2560.503–1(b)(3). As examples of claims procedures that unduly inhibit or hamper processing of benefits claims, the regulation offers: (1) "a provision or practice that requires payment of a fee or costs as a condition to making a claim or to appeal-

---

**3.** (Plaintiff Day's Opposition to AT & T's Motion for Summary Judgment on the Pension Offset Issue at 12, hereafter, "Plaintiff's Opposition," Docket Item No. 146.)

On March 30, 2010, Defendant filed Objections and Motion to Strike Declaration of David Day Submitted in Support of Plaintiff's Reply to AT & T's Opposition to his Motion for Summary Judgment on the Pension Issue. (hereafter, "Defendant's Motion to Strike Plaintiff's Declaration," Docket Item No. 155.) Defendant moves to strike Plaintiff's Declaration on the ground that it consists of irrelevant and self-serving hearsay statements, which lack personal knowledge and foundation. (*Id.* at 1.) The Court did not rely on Plaintiff's Declaration in resolving the present Motions. Accordingly, the Court OVERRULES Defendant's Objections and DENIES as moot Defendant's Motion to Strike.

ing an adverse benefit determination"; and (2) "the denial of a claim for failure to obtain a prior approval under circumstances that would make obtaining such prior approval impossible or where application of the prior approval process could seriously jeopardize the life or health of the claimant." (*Id.*) The Court finds that maintaining different mailing addresses for different categories of processing requests is not the type of procedure that could reasonably fall into the same category as a pre-payment or prior approval requirement.

In sum, the Court finds that the Plan language unambiguously imparts full discretionary authority on the Plan Administrator to interpret the provisions of the Plan and to make eligibility determinations as needed. Accordingly, the Court finds that Sedgwick's denial of Plaintiff's claim regarding offset of benefits is properly reviewed for abuse of discretion only.

### 2. Denial of Plaintiff's Appeal for Offset Benefits

At issue is whether Sedgwick abused its discretion when it determined that Plaintiff's LTD benefits were subject to offset by a transfer of Plaintiff's entire accrued pension benefit to an Individual Retirement Account ("IRA").

██ An ERISA plan administrator abuses its discretion if it renders decisions without any explanation, construes provisions of the plan in a way that conflicts with the plain language of the plan, or relies on clearly erroneous findings of fact in making benefit determinations. *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1472–73 (9th Cir.1993). On the other hand, the administrator's decision is not an abuse of discretion if it is based on a reasonable interpretation of the plan's terms and was made in good faith. *Estate of Shockley v. Alyeska Pipeline Service Co.*, 130 F.3d 403, 405 (9th Cir.1997).

Here, the Plan provides the following benefit offset provision: "In addition to those listed in the applicable SPD, other benefits that reduce Benefits paid under the Plan include all benefits for which the Employee would be eligible if he applied for them, whether or not he actually receives them." (AR at 1060.) The SPD further provides:

> The Plan provides you with an LTD benefit ... reduced by benefits you may receive from other sources of disability income, such as ... pension benefits you may receive from any SBC Company pension plan.... If you are eligible and apply for pension benefits ... your pension benefit, to the extent paid to you, will be subtracted from your LTD payments. (If you elect a cashout, the equivalent monthly amount will be calculated and used as the factor for integration with LTD payments.)

(AR at 968–69.)

On or around November 7, 2005, Plaintiff and his wife executed a "Retirement Election—Lump Sum" form that authorized a direct rollover of Plaintiff's entire accrued pension benefit to an IRA account with Charles Schwab. (Plaintiff's Motion, Ex. 3.) On December 16, 2005, Charles Schwab confirmed that the transfer of funds had occurred. (Plaintiff's Motion, Ex. 6.) In a letter dated August 12, 2008, Sedgwick notified Plaintiff that his request for LTD benefits had been approved, and that his "LTD benefit is reduced by certain other disability benefits such as Pension." (hereafter, "August 12, 2008 Letter," Plaintiff's Motion, Ex. 5.) In its August 12, 2008 letter, Sedgwick also stated that it had "received information that [Plaintiff] elected a lump-sum rollover [of his] pension in November 2005," and that the Plan had "calculated an estimated single-life monthly annuity of $74.71, and this amount

also reduced [his] payable LTD monthly benefit." (*Id.*)

The issue then becomes whether Sedgwick abused its discretion in denying Plaintiff's appeal of Sedgwick's decision to offset his LTD benefits.

### a. Sedgwick's Explanation of the Reason for the Benefit Denial

■ At issue is whether Sedgwick provided Plaintiff with any explanation of its decision to offset his LTD benefits.

The Court finds that on several occasions, Sedgwick provided Plaintiff with an explanation of the reason for the benefit offset. Namely, the August 12, 2008 Letter explained that since Plaintiff elected a lump-sum rollover of his pension, his monthly LTD benefit would be reduced by an amount representing a single-life monthly annuity. Moreover, in its February 11, 2009 Letter denying Plaintiff's appeal of the offset decision, Sedgwick again explained that under the terms of the Plan as set out in the SPD, the Plan may reduce LTD benefits by benefits received from another source, such as a pension. (February 11, 2009 Letter at 1.) Sedgwick stated that since Plaintiff elected to receive his pension in a lump-sum cashout, his monthly LTD benefit would be reduced by an equivalent amount. (*Id.* at 2.) Thus, the Court finds that Sedgwick did not deny Plaintiff's claim without any explanation. *See Eley*, 945 F.2d at 279.

### b. Conflict with Plain Language of the Plan

■ At issue is whether Sedgwick's decision to offset Plaintiff's LTD benefits conflicts with the plain language of the plan.

As previously discussed, the Plan expressly authorizes the Claims Administrator to reduce the LTD benefit by any pension benefits the participant may receive from any company pension plan. The issue then becomes whether Plaintiff "received" a benefit from his pension plan when he rolled over his entire accrued pension benefit to an IRA account. In light of the SPD's language specifically referring to a pension "cashout" as a manner in which to receive a pension benefit,[4] and the Retirement Election form's inclusion of a rollover to an IRA as a "lump sum" payout,[5] the Court finds that it is not unreasonable to interpret the Plan to include such a rollover within the ambit of "pension benefits [the participant] may receive."

Plaintiff relies on *Blankenship v. Liberty Life Assurance Co. of Boston* for the proposition that retirement benefits transferred to an IRA account are not "received" by the plan participant as a matter of law.[6] However, Plaintiff's reliance on *Blankenship* is misplaced. Unlike here, the plan at issue in *Blankenship* "did not give the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 624 (internal quotation omitted). Thus, the district court in that case applied a de novo, rather than abuse of discretion, standard of review. *Id.* In reviewing the district court's determination that the plan could not offset benefits by the amount of pension benefits transferred to an IRA account, the Ninth Circuit found that the term "receives" was not defined in the plan. *Id.* at 624. Since the term "receives" was thus ambiguous in the context of the plan, the court applied the rule of *contra proferentem*, which holds that "if, after applying the normal principles of contractual construction, the insurance

---

4. (AR at 968–69.)

5. (Plaintiff's Motion, Ex. 3.)

6. 486 F.3d 620 (9th Cir.2007).

contract is fairly susceptible of two different interpretations, another rule of construction will be applied: the interpretation that is most favorable to the insured will be adopted." *Id.* at 625 (internal citation omitted). Here, however, the Plan Administrator is expressly granted "sole and absolute discretion to interpret the provisions of the Plan." (*See* AR 995.) Thus, there is no need to apply principles of contract construction—under the abuse of discretion standard, the Court must affirm Sedgwick's decision to offset Plaintiff's LTD benefit unless a reasonable interpretation of the Plan language "pension benefits you may receive" could not encompass a rollover of Plaintiff's pension into an IRA account. *See Estate of Shockley,* 130 F.3d at 405.

Finally, the Court acknowledges that there is an inherent tension in the Plan language because a common sense understanding of the term "disability income" does not naturally include "pension benefits." Standing alone, the term appears to refer to sources of replacement income that would typically be provided to an employee as a result of being disabled, such as workers' compensation or social security disability insurance. A pension, on the other hand, is normally a benefit that is intended to provide for employees during their retirement and is not at all dependent on whether the beneficiary is disabled. Here, however, the Plan language explicitly enumerates pension benefits as an example of a source of disability income, and thus the Court must conclude that it is reasonable for the Plan to interpret the term disability income to include pension benefits. Since ERISA does not impose on employers an obligation to provide their employees with any benefits at

all, ERISA does not provide any legal basis for the Court to question the fairness of the Plan's substantive provisions, as long as the Plan interprets those provisions reasonably. *See, e.g., Fuller v. Liberty Life Assurance of Boston,* 302 F.Supp.2d 525, 535 (W.D.N.C.2004) ("Although ERISA establishes a comprehensive regulatory scheme for employee welfare benefit plans, it does not mandate any minimum substantive content for such plans.").

Accordingly, the Court finds that Sedgwick's decision to offset Plaintiff's LTD benefits did not contradict the plain language of the Plan. *See Eley,* 945 F.2d at 279.[7]

In sum, the Court finds that Sedgwick did not abuse its discretion when it denied Plaintiff's appeal of Sedgwick's decision to offset Plaintiff's LTD benefits.

### 3. ADEA Benefit Offset Requirements

■ In the alternative, Plaintiff contends that Sedgwick's decision to offset Plaintiff's LTD benefits violated the Age Discrimination in Employment Act ("ADEA"). (Plaintiff's Motion at 12.)

The ADEA provides:

It shall not be a violation ... solely because an employer provides a bona fide employee benefit plan or plans under which long-term disability benefits received by an individual are reduced by any pension benefits ... (A) paid to the individual that the individual voluntarily elects to receive; or (B) for which an individual who has attained the later of age 62 or normal retirement age is eligible.

---

**7.** The factual basis of Sedgwick's decision is not in dispute. Plaintiff admits that he authorized the Plan to distribute the entire balance of his accrued pension benefit to an IRA account. Thus, there is no issue as to whether Sedgwick's benefit denial was based on clearly erroneous findings of fact. *Taft,* 9 F.3d at 1473.

29 U.S.C. § 623($l$)(3). In *Kalvinskas v. California Institute of Technology,* the Ninth Circuit held that although the ADEA permits an employer to offset LTD benefits by the pension benefits for which an employee is "eligible," the employer may not "require" a participant to involuntarily retire by offsetting LTD payments by an amount the participant could only receive by retiring. 96 F.3d 1305, 1308 (9th Cir.1996).

Here, there is no evidence that Plaintiff's election to rollover his lump-sum pension benefit into an IRA account was not fully voluntary. Furthermore, unlike in *Kalvinskas,* the Plan here did not require participants to retire before they could receive any pension benefit, so the offset did not effectively force Plaintiff to retire in violation of the ADEA.[8] Thus, the Court finds that Sedgwick's decision to offset Plaintiff's LTD benefits did not violate the ADEA.

### D. *Conclusion*

The Court GRANTS Defendant's Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment. Judgment will be entered in favor of Defendant and against Plaintiff.

---

**8.** The ADEA provides that "no ... employee benefit plan shall require or permit the involuntary retirement of any individual ... be-cause of the age of such individual." 29 U.S.C. § 623(f)(2).