Barbara A. **DYTRT,** Plaintiff–Appellant,

v.

The **MOUNTAIN STATE TELEPHONE AND TELEGRAPH COMPANY,** Defendant–Appellee.

Nos. 88–15737, 89–15201.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 1989.

Decided Dec. 17, 1990.

Curtis L. Kennedy, Denver, Colo., for plaintiff-appellant.

Ruth V. McGregor, Nancy L. Rowen, Fennemore Craig, Phoenix, Ariz., for defendant-appellee.

Before HALL, BRUNETTI and NOONAN, Circuit Judges.

BRUNETTI, Circuit Judge:

Appellant Barbara Dytrt ("Dytrt") sued her employer, appellee The Mountain States Telephone and Telegraph Company ("Mountain Bell"), alleging federal claims under §§ 404 and 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1104, 1140, and a state law claim for the breach of the express and implied covenant of good faith and fair dealing, pursuant to Mountain Bell's disallowance of Dytrt's attempted withdrawal of her decision to take early retirement. The district court granted summary judgment for Mountain Bell on the ERISA claims, dismissed the state law claim, and awarded Mountain Bell attorney's fees. We reverse the summary judgment on the ERISA claims, affirm the dismissal of the state law claims, vacate the award of attorney's fees, and remand.

### A. Facts and Procedural Background

The facts of this case are undisputed. Appellant Barbara Dytrt worked for appellee Mountain Bell for thirty-one years in various management positions. In December 1986 she took the position of Facilities–Force Staff Manager in Mountain Bell's Marketing/Products Operator Service segment in Tempe, Arizona. Lois Schmidt, Director of Marketing, told her shortly after she took this position that it would exist only "for a while." Dytrt was unable to get a written or oral guarantee as to the position's longevity. However, District Manager Billie Stephens, her immediate supervisor, did refer to it as "a solid job."

On January 16, 1987 Mountain Bell announced a special retirement plan with incentive benefits for certain management employees, consisting of one year's salary plus supplemental benefits of up to $8,000, in addition to regular pension benefits, with retirement commencing on March 31. The plan, entitled "Enhanced Management Transition Program" ("the Plan" or "EMTP"), qualifies as an employee welfare benefit plan under ERISA, 29 U.S.C. § 1001 *et seq.*, and is subject to those statutory provisions. The Plan is self-maintained and the officers of Mountain Bell are its fiduciaries. The purpose of the Plan was to reduce the number of managers who had five or more years of service as of March 31.

According to the Plan description furnished to the employees, an employee was eligible if he or she (1) was a regular full-time or part-time management employee of Mountain Bell or its subsidiaries on the active payroll as of January 12, with five or more years of employment as of March 31; (2) elected the Plan by submitting a response form on or before February 20 (or by March 31 if the delay was for good cause as determined at the discretion of Mountain Bell), indicating election of the Plan and selecting one of two benefit options; and (3) received the approval of both the segment vice-president and the Vice President–Human Resources, which could be withheld due to the "critical needs of the business."

The Plan description also clearly indicated that once eligibility was determined and granted, the decision to participate could not be revoked, except at the discretion of Mountain Bell for "good cause related to an exceptional hardship." However, a negative response was revocable, because no such determination on eligibility would have occurred. The Plan description instructed employees to refer questions to a list of segment Human Resource managers, and also listed eight "EMTP Contacts" with telephone numbers. Subsequent to this initial Plan description, Mountain Bell circulated various memoranda, articles, and notices regarding the Plan from January 17 through February 20.[1]

On February 18 Dytrt submitted her first response form, checking the box indicating "NO, I do not want to be considered for participation eligibility." At that time Dytrt realized that her position could be centralized or eliminated, as Mountain Bell was eliminating and consolidating (regionalizing) management jobs like hers and had learned in January that a major part of her job responsibility could be eliminated. Nevertheless, she decided not to elect the Plan. Also on February 18 Mountain Bell extended the deadline for election of the Plan from February 20 to Monday, March 2. Pursuant to the Plan description, Mountain Bell further permitted responses through March 31, provided an employee could show good cause for the delay in responding. See supra at 891.

On Friday, February 27 Dytrt was told that her position would be eliminated due to regionalization and that she could either (1) move to Salt Lake City, Utah and take a comparable position; (2) elect retirement under the Plan; or (3) attempt to find employment within the Phoenix area. She was reluctant to take the Utah job, as she took care of her elderly mother in Tempe. However, by her own admission she did not consider her options or call her mother over the weekend. On Monday, March 2 Dytrt submitted her second response form, checking the box indicating "YES, I want to be considered for the option indicated below"

and marking option 1. The form specifically provided in block capitals the following legend:

I UNDERSTAND THAT MY DECISION WHICH IS INDICATED BELOW IS IRREVOCABLE BY ME.

I ALSO UNDERSTAND THAT IF I INDICATE "YES", THIS DOES NOT GUARANTEE THAT I WILL BE ELIGIBLE FOR THE PROGRAM. THIS FINAL DECISION REMAINS AT THE DISCRETION OF THE COMPANY.

Notwithstanding this legend, she testified that it was her belief that under the circumstances, she could change her decision.

That evening she spoke with her mother, who indicated a willingness to go to Salt Lake. Dytrt then decided she would take the Salt Lake City job and relocate. On Tuesday, March 3 she told Stephens and Schmidt of her change of mind. Both made appeals on her behalf, with Stephens writing a March 3 memorandum to Schmidt and Schmidt writing a March 6 memorandum to R.C. Hawk, Vice President–Marketing, F.L. Cook, Vice President–Human Resources, and A.G. Ames, Executive Vice President and Chief Operating Officer. Both memoranda personally requested that Dytrt be allowed to rescind her positive response, concluding that "Barbara can make a real positive contribution to the company." Dytrt also wrote a letter on March 10 attempting to revoke her acceptance. Mountain Bell maintained that her acceptance was irrevocable and notified her that her retirement was effective as of April 20. Dytrt began receiving monthly pension benefits of approximately $1,300 and received a severance benefit in the amount of her previous annual salary pursuant to option 1, distributed over a two-year period.

On May 13 her attorney submitted a revocation request on her behalf to Edward Kerber, the Plan Administrator. On May 20 Kerber notified her attorney that his request would be treated as an appeal and would be referred to the Plan Review Committee, consisting of Mountain Bell officers and directors. On July 17 the Committee

---

**1.** Over one thousand managers elected to take early retirement under the Plan.

denied her request for reinstatement, finding that Dytrt had not shown "good cause related to an exceptional hardship" to justify the cancellation of her March 2 acceptance.

Dytrt filed suit on September 28, 1987 alleging that Mountain Bell (1) breached its fiduciary duty under § 404 of ERISA; (2) interfered with protected rights under § 510 of ERISA; and (3) breached the express and implied covenant of good faith and fair dealing under state law. On cross-motions for summary judgment, the district court granted Mountain Bell summary judgment on the ERISA claims and dismissed the state law claim as preempted by ERISA. The court subsequently awarded ten percent of the attorney's fees requested by Mountain Bell.

Dytrt appeals (1) the summary judgment for Mountain Bell on the ERISA claims; (2) the dismissal of the state law claim; and (3) the award of attorney's fees. Mountain Bell seeks attorney's fees on the appeal.

### B. Standard of Review

■ This circuit reviews a district court's grant of summary judgment *de novo*, *Kruso v. International Telephone & Telegraph Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990), viewing the evidence in the light most favorable to the party against whom summary judgment was granted to determine whether there are any genuine issues of material fact and whether the district court properly applied the relevant substantive law. *Tzung v. State Farm Fire and Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

### C. The Validity of the Acceptance

■ Dytrt first contends that her March 2 acceptance was invalid because her March 3 attempted revocation occurred prior to her eligibility determination and was thus a valid revocation. Mountain Bell maintains that the March 2 acceptance was valid, because Mountain Bell had determined Dytrt eligible prior to her March 3 attempted revocation.[2]

Under the Plan an employee was eligible if the employee (1) held a management position for five years; (2) submitted a positive response form; and (3) was approved by the segment vice president and Vice President–Human Resources. The first two requirements are not disputed.[3] Although Dytrt claims that she was not approved by the two vice presidents between her acceptance and attempted revocation, the record shows that all managers in her division were pre-approved.

At the outset of the Plan, Dytrt's segment vice-president, Robert Hawk, Vice President–Marketing, determined that all employees within the Marketing Segment who elected to participate in the Plan would be approved. Similarly, prior to March 2 Fred Cook, Vice President–Human Resources, informed Neal Greenhalgh, the Plan Administrator, that he would not withhold Plan eligibility from any management employee on the basis of critical needs of

---

2. Mountain Bell also relies upon the legend on the response form signed by Dytrt clearly indicating that the decision was irrevocable. *See supra* at 892. However, the Plan description provided that the decision to participate could not be revoked once eligibility was determined and granted, which perhaps allows for a valid revocation prior to the determination of eligibility. In fact, it was this language that allowed negative responses, including Dytrt's initial response, to be changed. Because Dytrt may have been confused by the conflict between the legend and the Plan description, our analysis focuses on the more lenient provisions of the Plan description, which provides for possible revocation. However, we do believe that the legend unequivocally warned Dytrt of the gravity of her response.

3. Dytrt raises for the first time on appeal that her response form was incomplete and thus ineffective, as she did not specify how her benefits were to be paid. We will not entertain this untimely argument, *Mahliot v. Southern Cal. Retail Clerks Union*, 735 F.2d 1133, 1137 (9th Cir.1984), *cert. denied,* 469 U.S. 1189, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985), but we must note that if we were to consider this issue, under the terms of the Plan only an affirmative response and a selection of the option of benefits had to be submitted. She marked both the "yes" box and the "option 1" box on the form. Therefore, her response was complete under the terms of the Plan.

the business unless the appropriate segment Vice President determined to withhold eligibility for such employee. Because these vice presidents acted in this manner, all managers within Marketing, including Dytrt, were pre-approved and would be automatically eligible for the Plan, should they elect to accept it. Therefore, upon the submission of her positive response, Dytrt was eligible, the other two requirements having been fulfilled, and her acceptance was valid.

### D. ERISA § 404—Breach of Fiduciary Duty

■ Dytrt next contends that the Plan Review Committee's decision to deny her request to revoke her acceptance breached its § 404 fiduciary duty under ERISA. Mountain Bell maintains that the Committee's denial did not breach its § 404 fiduciary duty. Before addressing the merits of Dytrt's claim, we must first determine the standard of review applicable to the Committee's denial.

The district court employed the standard of review announced by this circuit in *Sokol v. Bernstein*, 803 F.2d 532, 534 (9th Cir.1986): Under § 404, a fiduciary's actions may not be reversed unless they are arbitrary, capricious, or in a bad faith manner and are not supported by substantial evidence or are erroneous on a question of law.

However, since the district court's decision the Supreme Court has held that under § 502, relating to actions to recover benefits due under a plan, *de novo* review is required, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). If there is such discretion, then the arbitrary and capricious standard applies. *Id.*

We have extended this reasoning to other ERISA claims: "We also review de novo the decisions of an employee benefit plan administrator in a civil action challenging the plan unless the plan provides otherwise." *Lea v. Republic Airlines, Inc.*, 903 F.2d 624, 628 (9th Cir.1990) (citing *Firestone*) (reviewing a breach of fiduciary duty claim).

In the present case the Plan gives Mountain Bell discretion "to determine eligibility for benefits or to construe the terms of the plan." Therefore, the "arbitrary and capricious" standard of review is appropriate. However, in applying that standard, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." 109 S.Ct. at 956–57 (internal quotation omitted).[4] We therefore review the Committee's decision to deny Dytrt's request for revocation of her acceptance under this less deferential standard.

■ Dytrt contends that she fell within the "good cause related to an exceptional hardship" exception and that the Plan Review Committee's failure to find that she qualified under this exception and its subsequent denial of her request to revoke her acceptance breached its § 404 fiduciary duty under ERISA. Mountain Bell maintains that Dytrt did not fall within this exception and that the Committee's denial was proper and did not breach its § 404 fiduciary duty.

ERISA § 404 provides in part that

(1) a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in

---

4. Prior to *Firestone* this circuit, in applying *Sokol*, often gave closer scrutiny to the decision of a plan administrator who is also the employer. *See Pilon v. Retirement Plan for Salaried Employees of Great N. Nekoosa Corp.*, 861 F.2d 217, 219–20 (9th Cir.1988); *Fielding v. Int'l Harvester*, 815 F.2d 1254, 1256 (9th Cir.1987); *Jung v. FMC Corp.*, 755 F.2d 708, 711–12 (9th Cir.1985). *See also Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149 (9th Cir.1986); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1352–53 (9th Cir.1984), cert. denied, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985).

a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA].

ERISA § 404(a)(1)(B), (D), 29 U.S.C. § 1104(a)(1)(B), (D).

We cannot determine whether the Committee acted "in accordance with the documents and instruments governing the plan" because there is no evidence in the record as to any standard set for exceptional hardship for the Plan Review Committee to use in determining whether an employee qualifies under this exception. *See* ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D). We find such absence of any rules, guidelines, or procedures extremely troubling.[5] We believe that Dytrt has presented a case of "good cause related to an exceptional hardship" and that the Committee failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use" in its decision to deny her request for revocation. *See* ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

The record shows that although Dytrt knew that her job might be eliminated and had received the Plan materials on January 17, it was not until the afternoon of Friday, February 27 that she learned that her job actually would be eliminated, shortly after she had received assurances of its continuance from Stephens, her supervisor. Because the deadline for electing the Plan was noon, Monday, March 2, Dytrt had less than one working day to decide whether to elect the Plan. Although we can assume

that under these circumstances Mountain Bell would, consistent with the Plan description, have extended the election deadline to March 31, as the delay would likely be considered for good cause, and Dytrt would have had more time to investigate her options, the record shows that neither Dytrt nor Stephens was aware of this provision. In fact, the record shows that Stephens specifically told Dytrt that morning that she had only three hours to elect the Plan. Moreover, the record shows that both Dytrt and Stephens attempted to reach Schmidt about the job in Salt Lake and Plan contacts regarding information about the Plan, to no avail. Therefore, she effectively had less than one working day to decide. Under such circumstances, we believe that Dytrt did not have sufficient time adequately to consider her options and thus qualified under the "good cause related to an exceptional hardship" exception; the Committee's decision to the contrary breached its fiduciary duty.[6] *See Paolillo v. Dresser Indus., Inc.*, 821 F.2d 81, 84 (2d Cir.1987) (where employees had six and five days notification of plan, and weekend and one day to review full details of plan, material issue raised as to whether employees given sufficient time to make a considered choice); *Bodnar v. Synpol, Inc.*, 843 F.2d 190, 193–94 (5th Cir.) (fifteen day period is sufficient), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988). We therefore reverse the district court's grant of summary judgment on the § 404 ERISA fiduciary duty claim and remand.

E. *ERISA § 510—Interference with Protected Rights*

■ Dytrt next contends that the Committee's denial of her request to revoke her acceptance, forcing her early retirement, interfered with her protected ERISA

---

**5.** In conducting its review the Committee did not even interview Dytrt or Stephens, her supervisor, limiting its investigation to a phone call of less than five minutes with Schmidt, the Marketing Director.

**6.** Because we find that the insufficient time afforded Dytrt by Mountain Bell constitutes "good cause related to an exceptional hardship," we need not consider Dytrt's arguments regarding Mountain Bell's alleged discrimination against Dytrt, its alleged failure to comply with ERISA

§ 503, 29 U.S.C. § 1133, and the alleged involuntariness of her decision. As to her arguments regarding Mountain Bell's failure to investigate independently her claim, its alleged failure to follow EMTP review procedures, its alleged denial of an opportunity for Dytrt to challenge the Committee's ruling, and the non-formation of a contract, all raised for the first time on appeal, we will not entertain these untimely arguments. *See Mahliot*, 735 F.2d at 1137.

rights, violating § 510 of ERISA, because her present monthly pension benefits are smaller than they would be if she had retired at a later date. Mountain Bell maintains that the Committee's denial did not interfere with her protected ERISA rights under § 510.

ERISA § 510 provides:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

ERISA, § 510, 29 U.S.C. § 1140

■■■ Section 510 prevents an employer from arbitrarily discharging an employee whose pension rights are about to vest. *Lojek v. Thomas,* 716 F.2d 675, 680 (9th Cir.1983). A claimant must show that employment was terminated because of a specific intent to interfere with ERISA rights in order to prevail under § 510; no action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the termination. *Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 881 (9th Cir.1989), *cert. denied,* — U.S. —, 111 S.Ct. 53, 112 L.Ed.2d 28; *Johnson v. United Airlines, Inc.,* 680 F.Supp. 1425, 1433 (D.Haw.1987); *Baker v. Kaiser Aluminum and Chem. Corp.,* 608 F.Supp. 1315, 1318–19 (N.D.Cal.1984).

■■■ This court must be particularly cautious when reviewing a district court's decision to grant summary judgment where issues of intent or motivation are involved. *Haydon v. Rand Corp.,* 605 F.2d 453, 455 n. 2 (9th Cir.1979); *Baker,* 608 F.Supp. at 1319. However, "a party against whom summary judgment is sought is not entitled to a trial simply because he has asserted a cause of action to which state of mind is a material element. There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim." *Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47

L.Ed.2d 754 (1976), *quoted in Baker,* 608 F.Supp. at 1319.

The only evidence presented by Dytrt to the district court was the fact that had she been allowed to remain in Mountain Bell's employ, the amount of her pension benefits would have been higher. This was an incidental effect, and not a motivating factor of the Plan Review Committee's decision to deny Dytrt's request for revocation of her acceptance of retirement. Therefore, we affirm the district court's grant of summary judgment on the § 510 ERISA interference with protected rights claim.

**F. *ERISA § 514—Preemption of State Law Claim***

■■■ Dytrt next contends that § 514 of ERISA does not preempt her state law claim for breach of the express and implied covenant of good faith and fair dealing. Mountain Bell maintains that the state law claim is preempted by ERISA.

ERISA § 514 provides in part:

(a) Supersedure; effective date

[T]he provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in ... this title and not exempt under ... this title....

(c) Definitions

(1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State....

(2) The term "State" includes a State, any political subdivision thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter.

ERISA § 514(a), (c), 29 U.S.C. § 1144(a), (c).

A law "relates to" a plan if it has a connection with or reference to such a plan. *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1095 (9th Cir.1985). However, the relationship cannot be "too tenuous, remote or peripheral." *Shaw v. Delta Airlines,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983).

This court has identified four categories of state law that have been held preempted by ERISA:

1) Laws that regulate the type of benefits or terms of ERISA plans;
2) laws that create reporting, disclosure, funding or vesting requirements for ERISA plans;
3) laws that provide rules for the calculation of the amount of benefits to be paid under ERISA plans;
4) laws and common-law rules that provide remedies for misconduct growing out of the administration of the ERISA plan.

*Martori Bros. Distrib. v. James–Massengale*, 781 F.2d 1349, 1357, *amended*, 791 F.2d 799 (9th Cir.), *cert. denied*, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 385 (1986).

This Circuit has specifically held that ERISA preempts common law theories of breach of contract implied-in-fact, as well as state claims for breach of implied covenants of good faith and fair dealing (promises implied-in-law). *Ellenburg*, 763 F.2d at 1095. Mountain Bell's alleged breach of the express and implied covenant of good faith and fair dealing is identical to the misconduct Dytrt alleges in her two ERISA claims. Therefore, we affirm the district court's dismissal of Dytrt's state law claim as preempted by ERISA.

#### G. *ERISA § 502—Attorneys' Fees*

▇ Dytrt last challenges the district court's awarding of $4,289.45 in attorneys' fees (10% of the amount requested) to Mountain Bell under ERISA § 502(g)(1).

ERISA § 502 provides in part:

(g)(1) In any action under this title ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1).

This court has set forth the following factors to consider in awarding attorneys' fees under ERISA:

1) The culpability or good faith of the opposing party;
2) the ability of the opposing party to pay the fee award;
3) the degree of deterrence which would result from an award of fees;
4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant ERISA legal question;
5) the relative merits of the parties' position.

*Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980).

The district court held that factors three and five favored Mountain Bell and were the basis for its award. Under factor five, the court ruled that Dytrt had made "no showing that under any standard, [she] would be entitled to prevail on her claims of ERISA violations." Although we affirm the district court's dismissal of Dytrt's state law claim, because we reverse the district court's grant of summary judgment on the § 404 ERISA claim, we must vacate the district court's award of attorney's fees to Mountain Bell, and remand the issue of attorney's fees to the district court. Each party shall bear their own costs on appeal.

REVERSED IN PART, AFFIRMED IN PART, VACATED IN PART, AND REMANDED.