25 F.3d 743
 18 Employee Benefits Cas. 1138
 CREDIT MANAGERS ASSOCIATION OF SOUTHERN CALIFORNIA; State
Court Receiver for Far West Administrators, Inc.; the
Complete Association; the Complete Master Trust; Fincomp
Insurance Marketing, Inc., Plaintiffs-Appellants,
v.
KENNESAW LIFE AND ACCIDENT INSURANCE COMPANY, Defendant-Appellee.
 Nos. 91-55070, 91-55447 and 91-55789.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 4, 1993.
Decided May 19, 1994.
 
 Richard P. Towne, Tisdale, Nicholson & Towne, Keith A. Fink, Cotkin & Collins, Los Angeles, CA, for plaintiffs-appellants on appeal only.
 Douglas L. Hallett, Coudert Bros., Los Angeles, CA, for defendant-appellee.
 Appeal from the United States District Court for the Central District of California, Mariana R. Pfaelzer, District Judge, Presiding.
 Before: CANBY, BOOCHEVER and NORRIS, Circuit Judges.
 Opinion by Judge CANBY; Dissent by Judge BOOCHEVER.
 CANBY, Circuit Judge.
 
 
 1
 In these consolidated appeals, Credit Managers Association of Southern California ("CMA"), appointed by a California state court as receiver for four insolvent health insurers, appeals the district court's award of attorney's fees to Kennesaw Life and Accident Insurance Company ("Kennesaw"). The district court awarded fees pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Sec. 1132(g)(1) (1988). CMA also appeals the district court's denial of its motion to quash a writ of execution obtained by Kennesaw to enforce the judgment. We affirm in part, reverse in part and remand.
 
 I. FACTS AND PROCEDURAL BACKGROUND
 
 2
 This appeal stems from the second round of proceedings in this protracted litigation. In March 1982, the Superior Court of Orange County appointed CMA as receiver for four insolvent entities that were involved in a program that provided health care benefits to individuals through their employers. Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co., 809 F.2d 617, 620 (9th Cir.1987) ("CMA I "). Kennesaw "contracted to provide some coverage in connection with these benefits." Id. at 619. In November 1983, CMA brought an action against Kennesaw on five theories: (1) violation of the California insurance code, (2) breach of fiduciary duty under ERISA, (3) breach of fiduciary duty under California law, (4) unfair claims practices, and (5) fraud. Id. The district court granted summary judgment in favor of Kennesaw; this court affirmed on all claims except the ERISA claim, which was remanded to the district court. Id. at 626. After this court's remand, Kennesaw again moved for summary judgment on the ERISA claim, but the district court denied the motion. Kennesaw next filed a motion, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss for failure to state a claim; the district court also denied this motion. In March 1990, the case proceeded to a bench trial. At the conclusion of CMA's evidence, the district court granted Kennesaw's motion for involuntary dismissal of the action pursuant to the former Fed.R.Civ.P. 41(b).[1] Kennesaw also filed a motion for attorney's fees under 29 U.S.C. Sec. 1132(g)(1), and for sanctions under Fed.R.Civ.P. 11. In March 1991, after two hearings, the district court granted Kennesaw's request for attorney's fees and entered judgment against CMA in the amount of $600,178.29. This fee award covered the period between the remand in CMA I and the district court's final judgment. The court, however, denied Kennesaw's request for Rule 11 sanctions against CMA's trial counsel. CMA appealed the fee award. In May 1991, to enforce the judgment, Kennesaw obtained a writ of execution against certain real property owned by CMA. In June 1991, CMA filed a motion to quash the writ on the ground that the judgment could only be enforced against the assets in the receivership estate. After a hearing, the district court denied CMA's motion, and CMA appealed.
 
 II. ATTORNEY'S FEES UNDER ERISA
 
 3
 A. Timeliness of Kennesaw's Request for Attorney's Fees
 
 
 4
 CMA first challenges the fee award on the grounds that Kennesaw failed to request attorney's fees in its answer to the complaint, and that the district court failed to enter a final pretrial order superseding the parties' pleadings. Therefore, argues CMA, Kennesaw waived the issue of attorney's fees, and the district court lacked authority to award fees. We reject these arguments.
 
 
 5
 To support its position, CMA relies on cases in which this court has refused to consider an issue that was not preserved in the pretrial order because the opposing party did not have notice and an opportunity to be heard. See, e.g., Pierce County Hotel Employees & Restaurant Employees Health Trust v. Elk's Lodge, No. 1450, 827 F.2d 1324, 1329 (9th Cir.1987) (defendant barred from asserting equitable defenses because they were not preserved in the pretrial order, plaintiff had no opportunity to address the merits of these defenses in its trial brief, and the district court made no findings or conclusions as to the defenses); Operating Eng'rs Pension Trust v. Cecil Backhoe Serv., Inc., 795 F.2d 1501, 1507 (9th Cir.1986) (refusing to consider an issue on appeal because appellant "did not present this argument below, ... it was not included as an issue in the district court's Pre-Trial Conference Order [and t]he district court made no findings or conclusions regarding [this issue]").
 
 
 6
 Here, however, because CMA had ample notice of Kennesaw's intent to seek attorney's fees and several opportunities to be heard on this issue, CMA's reliance on these cases is misplaced. Both parties approved and submitted to the district court a pretrial conference order in which Kennesaw requested an award of attorney's fees pursuant to 29 U.S.C. Sec. 1132(g)(1). The record does not reveal whether the district court actually signed or filed this order.[2] Nevertheless, this pretrial conference order, which was approved and signed by CMA's trial counsel, put CMA on notice that Kennesaw intended to seek fees if it prevailed at trial. In addition to raising the issue in the pretrial conference order, Kennesaw also requested attorney's fees in its trial brief and at trial. Moreover, after Kennesaw filed its motion for an award of attorney's fees, both parties briefed the issue and the district court held two hearings. Given this record, we conclude that Kennesaw properly presented the issue of attorney's fees, and that the district court did not err by considering the fee request.
 
 B. CMA's Status as an ERISA Fiduciary
 
 7
 CMA next contends that the district court lacked statutory authority to award fees to Kennesaw because CMA failed to prove at trial that CMA was the fiduciary of an ERISA plan. We disagree.
 
 
 8
 Pursuant to 29 U.S.C. Sec. 1132(g)(1), courts have discretion to award reasonable attorney's fees to either party in any action by an ERISA-plan participant, beneficiary, or fiduciary. In CMA I, this court held that CMA had standing to bring an ERISA claim because the evidence in the record demonstrated that CMA "could be" an ERISA fiduciary. CMA I, 809 F.2d at 626. This conclusion was based in part on CMA's argument that each employer who subscribed to the Continental Organization of Medical, Professional and Technical Employees ("COMPETE")--one of the insolvent entities in CMA's receivership--had thereby established its own ERISA plan. Id. at 625. In CMA I, we further held that there was a triable issue of fact regarding whether an ERISA plan existed; we therefore reversed the district court's grant of summary judgment on the ERISA claim. Id. At trial, however, CMA failed to prove that any of the employers who subscribed to COMPETE had created an ERISA plan. Therefore, CMA argues that, because it failed to satisfy its burden of proving that an ERISA plan existed, it could not have been an ERISA fiduciary.
 
 
 9
 We reject this argument. During the eight years of litigation prior to this appeal, CMA has purported to be a fiduciary to various ERISA plans and has asserted standing to pursue this case on behalf of the participants of those plans. We agree with Kennesaw that it would be unjust to permit CMA to insulate itself from liability for attorney's fees simply because it failed to produce sufficient evidence to prevail on its claims. Indeed, the fact that CMA pursued for so long a claim that lacked any evidentiary basis weighs in favor of awarding fees to Kennesaw. Accordingly, because CMA colorably maintained that it was a fiduciary of an ERISA plan throughout the proceedings below, in a manner sufficient to withstand summary judgment, we conclude that the district court had authority to award attorney's fees under section 1132(g)(1) notwithstanding CMA's ultimate failure to prove its claims.
 
 
 10
 Our conclusion is not undermined by the cases upon which CMA relies. In M & R Investment Co., Inc. v. Fitzsimmons, 685 F.2d 283 (9th Cir.1982), this court rejected the prevailing defendants' request for attorney's fees under 29 U.S.C. Sec. 1132(g) because the action had not been brought by a participant, beneficiary, or fiduciary of an ERISA plan. Id. at 288. M & R Investment Co., however, is clearly distinguishable from the case before us. Unlike CMA, plaintiff M & R Investment Company ("M & R") never alleged that it was a participant, beneficiary, or fiduciary of an ERISA plan; indeed, M & R did not even bring the action under the ERISA statute. Id. at 285 (incorporating the district court's findings of fact as set forth in M & R Investment Co., Inc. v. Fitzsimmons, 484 F.Supp. 1041, 1044-53 (D.Nev.1980)). Instead, M & R's action sought "specific performance of an allegedly breached loan contract" or, in the alternative, "$100 million in damages for the allegedly breached loan contract." Id. at 1043. Moreover, to prevail on its claims, M & R sought to demonstrate that it was not a "party in interest" to the ERISA plan with which it had contracted for the loan. 685 F.2d at 285-88. Thus, the facts of M & R Investment Co. stand in stark contrast to this case, in which CMA alleged an ERISA claim and for eight years adamantly asserted that it was the fiduciary of an ERISA plan.
 
 
 11
 CMA's reliance on Downey Community Hosp. v. Wilson, 977 F.2d 470 (9th Cir.1992), is similarly unavailing. In Downey, an employer sued several defendants who had provided health services to individuals pursuant to the employer's ERISA plan; the employer sought a declaratory judgment determining the extent to which these services were covered under the plan. Id. at 472. The employer's "stop-loss" insurance carrier was then brought into the action as a third party defendant. Id. Following a trial, the district court ruled in favor of the employer and its insurer, the third party defendant, and awarded them attorney's fees under section 1132(g)(1), to be paid by the defendant health service providers. Id. & n. 1 (noting that the case presented the "odd circumstance" where a named defendant and the plaintiff were "joined in a common cause insofar as both parties challenged the medical defendants' claim"). On appeal, the health service providers challenged the fee award and argued that they "had no dispute with the [third party defendant insurer] and [it] could neither sue or be sued by them." Id. at 474. This court reversed the award of attorney's fees to the insurer on the ground that it did "not qualify as a prevailing party under ERISA because it is neither a participant, fiduciary, nor a beneficiary of the plan." Id. at 475. Downey elaborated that "[a]warding attorney's fees to stop-loss insurers could undermine the purpose of ERISA by discouraging beneficiaries from attempting to vindicate legitimate claims." Id. We find that Downey is distinguishable from this case. First, CMA brought this action directly against Kennesaw and asserted that Kennesaw was an ERISA fiduciary. See CMA I, 809 F.2d at 626 (finding that "the fact that both CMA and Kennesaw could be ERISA fiduciaries provides CMA's standing to sue Kennesaw"). More important, as we discuss below, awarding attorney's fees to Kennesaw will serve the purposes of ERISA by discouraging other litigants from relentlessly pursuing groundless claims.
 
 
 12
 We also find inapplicable the cases cited by CMA indicating that this court disfavors the award of attorney's fees against ERISA plaintiffs. See Flanagan v. Inland Empire Elec. Workers Pension Plan, 3 F.3d 1246, 1253 (9th Cir.1993); Tingey v. Pixley-Richards West, Inc., 958 F.2d 908, 909 (9th Cir.1992). These cases involved individual plaintiffs who unsuccessfully sought pension benefits to which they believed they were entitled. Our denial of fees reflected the fact that the equitable factors set forth in Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 452-53 (9th Cir.1980), " 'very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs.' " Tingey, 958 F.2d at 909 (quoting Carpenters So. Cal. Admin. Corp. v. Russell, 726 F.2d 1410, 1416 (9th Cir.1984)). CMA, however, is in a position quite unlike that of the plaintiffs in Flanagan and Tingey, and the Hummell factors apply quite differently to it. We turn now to that subject.
 
 
 13
 C. District Court's Application of the Hummell Factors
 
 
 14
 CMA contends that the district court misapplied the relevant factors when it decided to award attorney's fees to Kennesaw. We disagree.
 
 
 15
 We review for an abuse of discretion the district court's award of attorney's fees under ERISA. Paddack v. Morris, 783 F.2d 844, 846 (9th Cir.1986). The factors to be considered in determining whether to award attorney's fees are: (1) the degree of the opposing party's culpability or bad faith, (2) the ability of the opposing party to satisfy an award of fees, (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances, (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA, and (5) the relative merits of the parties' positions. Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir.1980). These factors are intended to guide the court's exercise of its discretion, Paddack, 783 F.2d at 846, but none "is 'necessarily decisive'; various permutations and combinations can support an award of attorney fees," id. (quoting Carpenters S. Cal. Admin. Corp. v. Russell, 726 F.2d 1410, 1416 (9th Cir.1984)).
 
 
 16
 Here, the district court considered the five Hummell factors and concluded that each weighed in favor of awarding fees to Kennesaw. The district court found that: (1) following this court's remand in CMA I, "CMA could not have had a good faith reasonable belief" that it could prove its ERISA claim against Kennesaw because CMA lacked any evidence to support the claim; (2) CMA's ability to pay the fee award was demonstrated by the large sums it previously had paid to its own attorneys; (3) a fee award would deter other potential ERISA litigants from pursuing groundless claims; (4) the significant legal issues were resolved in CMA I, and no such issues were resolved after this court's remand; and (5) CMA had pursued the litigation solely for the purpose of extracting a settlement from Kennesaw, and thus CMA in effect had squandered the assets available to it by paying its attorneys rather than the defrauded health-benefits claimants.
 
 
 17
 On appeal, CMA first attacks the district court's finding that CMA acted in bad faith by continuing to pursue the litigation after the remand in CMA I.[3] CMA points out that, after this court's remand in CMA I, the district court denied Kennesaw's motion for summary judgment and motion to dismiss the complaint for failure to state a claim. CMA protests that these favorable pre-trial rulings "continuously reaffirmed to [CMA] that its case had merit and validity" and, therefore, that the district court itself was responsible for CMA's continued pursuit of the case. We are unpersuaded. The district court made clear that its decision to allow the case to proceed to trial was based primarily on misrepresentations made by CMA and its counsel regarding the facts that it could prove. The court stated:
 
 
 18
 CMA never tried to evaluate who the unpaid claimants were or how much was actually owed to them. CMA's representations to the Court as to the total amount involved in this litigation appear now to have been without any basis in fact. CMA did not appear to have any idea what its recovery might be even if it prevailed in the litigation.... After the remand from the Ninth Circuit, the Court had many meetings with CMA's counsel in an attempt to ascertain how the case was to be proved and how much the total claim was. The Court spent this time because it was reluctant to grant summary judgment to Kennesaw when so many individual claims of the type involved here were at stake. In these discussions, the Court never received any clear answers from CMA's counsel, and out of frustration, finally permitted the matter to go to trial.
 
 
 19
 While we agree with CMA that the district court has a duty to evaluate the evidence independently when it decides a dispositive pre-trial motion, our review of the record satisfies us that the district court fulfilled its obligation as best it could in this case. We also find ample support in the record for the district court's conclusion that, following the remand in CMA I, CMA could not have had a good faith belief that it could prove its ERISA claim against Kennesaw.[4] Accordingly, because CMA obtained favorable pre-trial rulings by representations without basis in fact, we find no merit in CMA's challenge to the district court's finding of bad faith.
 
 
 20
 CMA next asserts that it does not have the ability to pay the fee award. Because CMA never raised this issue in the district court and no exceptional circumstances exist, we will not consider it. See United States v. Oregon, 769 F.2d 1410, 1414 (9th Cir.1985) ("The rule is well-established that absent exceptional circumstances, an issue not raised below will not be considered on appeal.").
 
 
 21
 Finally, we agree with the district court that the three remaining Hummell factors weigh in favor of awarding fees to Kennesaw; CMA's appeal presents no valid grounds upon which the district court's findings on these factors could be overturned. Accordingly, we conclude that the district court properly applied the Hummell factors and did not abuse its discretion by awarding attorney's fees to Kennesaw.
 
 D. Amount of the Fee Award
 
 22
 CMA further argues that, in determining the amount of the fee award, the district court failed to consider the relevant criteria.[5] We disagree.
 
 
 23
 When awarding fees under ERISA, "the court must determine a 'lodestar' amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." D'Emanuele v. Montgomery Ward & Co., 904 F.2d 1379, 1383 (9th Cir.1990). "[T]he court may increase or decrease the lodestar fee based on factors identified by this circuit in [Kerr, 526 F.2d at 70] that are not subsumed within the initial calculation of the lodestar." Id.
 
 
 24
 In calculating the amount of the fee award, the district court stated:
 
 
 25
 Upon examination, the Court finds that the number of hours which were spent by Kennesaw's counsel and the hourly rate charged were reasonable given the competence of Kennesaw's counsel in the field involved here, the complexity of the issues and the tenacity of CMA in advancing its legal arguments. The Court awards the lodestar figure and finds it inappropriate to adjust that figure upward or downward or to apply a multiplier. At the request of the Court, Kennesaw has segregated its fees and costs attributable to the period after remand, and the Court finds that those fees and costs should be the basis of the award to be made in the Judgment.
 
 
 26
 The language of the order demonstrates that the district court considered and applied the relevant Kerr factors, including: the time and labor involved, the skill necessary to defend Kennesaw, the experience of Kennesaw's counsel, and the complexity of the issues. The district court's focus on these factors was entirely proper. See D'Emanuele, 904 F.2d at 1386 ("[t]he district court should discuss only those Kerr factors that are relevant to the court's decision; each and every factor need not be discussed"). Kennesaw's fee request, moreover, was supported by detailed billing records. We find no abuse of discretion in the district court's determination of the amount of the fee award.
 
 
 27
 E. CMA's Motion to Quash the Writ of Execution
 
 
 28
 CMA contends that the district court erred by denying its motion to quash the writ of execution because, under California law, Kennesaw cannot enforce the judgment against CMA by execution. Instead, CMA asserts that Kennesaw must present its claim to the Orange County Superior Court which appointed CMA as receiver. We agree.
 
 
 29
 Pursuant to Fed.R.Civ.P. 64, state law governs the remedies available for the seizure of property to satisfy a judgment. The general rule in California is that:A judgment against a receiver operates only as an established claim against the assets in his possession. It is not enforceable by execution. The manner of paying it is under the exclusive control of the court in which the receivership proceeding is pending, and to it application for payment must be made.
 
 
 30
 55 Cal.Jur.3d, Receivers Sec. 72 (1980) (emphasis added); see also Sealite, Inc. v. Finster, 149 Cal.App.2d 612, 618, 309 P.2d 51, 55 (1957) ("a receiver is liable to persons not beneficially interested in his receivership, in his official capacity only"); Chiesur v. Superior Court, 76 Cal.App.2d 198, 201, 172 P.2d 763, 765 (1946) (adopting the rule established in other jurisdictions "that a receiver is liable to those who are not interested in the estate, in his official capacity only, for negligence in the performance of his authorized duties, and that the recovery is a charge upon the estate in receivership").
 
 
 31
 California courts, however, have recognized an exception to this general rule; a receiver can be held personally liable for his misconduct or mismanagement of the receivership estate. Aviation Brake Sys., Ltd. v. Voorhis, 133 Cal.App.3d 230, 235, 183 Cal.Rptr. 766, 769 (1982) ("upon the receiver's final report and account, the receiver in his personal capacity may be surcharged for losses to the receivership estate based upon his misconduct or mismanagement") (citing Macmorris Sales Corp. v. Kozak, 249 Cal.App.2d 998, 58 Cal.Rptr. 92 (1967); Rochat v. Gee, 137 Cal. 497, 70 P. 478 (1902)). Relying on this exception, Kennesaw argues that CMA is not immune from personal liability for the fee award because the district court found that CMA acted in bad faith when it pursued this litigation after the remand in CMA I. We need not decide whether Kennesaw may invoke this doctrine to render CMA personally liable for the fee award, however, because even if we accepted Kennesaw's argument, it does not follow that a federal writ of execution is the proper means of enforcing the judgment. We conclude that, under California law, Kennesaw's claim that CMA is personally liable for the fee award must be presented to the state court when CMA submits its final report and account. See Voorhis, 133 Cal.App.3d at 235, 183 Cal.Rptr. at 769.[6]
 
 
 32
 In the alternative, Kennesaw argues that California receivership law is preempted by ERISA. "To determine whether a state law is preempted we must look at whether it encroaches on the relationships regulated by ERISA." General Am. Life Ins. Co. v. Castonguay, 984 F.2d 1518, 1522 (9th Cir.1993). For example, because "ERISA doesn't purport to regulate those relationships where a plan operates just like any other commercial entity," state law can "apply to transactions between [ERISA] plans and their creditors or their landlords or their own employees." Id.; see also Dytrt v. Mountain State Tel. & Tel. Co., 921 F.2d 889, 896-97 (9th Cir.1990) (ERISA preempts only state laws that relate to an ERISA plan; the relationship cannot be "too tenuous, remote or peripheral") (quotation omitted).
 
 
 33
 Because ERISA does not purport to regulate the means by which a creditor enforces a judgment against an ERISA plaintiff, we conclude that ERISA does not preempt the state receivership law at issue here. See Castonguay, 984 F.2d at 1522; see also Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825, 831-32, 108 S.Ct. 2182, 2186-87, 100 L.Ed.2d 836 (1988) (ERISA does not preempt garnishment of welfare benefit plan under state's general garnishment law). Indeed, the question whether Kennesaw may enforce the judgment against CMA's assets by execution is collateral to the underlying ERISA action through which the judgment was obtained. Because California receivership law has, at most, only a tenuous relationship with the ERISA action, see Dytrt, 921 F.2d at 896-97, the state law is not preempted. See id. Accordingly, we conclude that the district court erred by denying CMA's motion to quash the writ of execution because California law requires Kennesaw to seek enforcement of the judgment in the state court that appointed CMA as receiver.
 
 
 34
 III. KENNESAW'S REQUEST FOR ATTORNEY'S FEES ON APPEAL
 
 
 35
 Kennesaw has requested an award of attorney's fees for this appeal. In considering whether to award fees under 29 U.S.C. Sec. 1132(g), we must consider the five Hummell factors. See Operating Eng'rs Pension Trusts v. B & E Backhoe, Inc., 911 F.2d 1347, 1356-57 (9th Cir.1990) (citing Hummell, 634 F.2d at 453). Having considered these factors, we find that an award of attorney's fees is not warranted; we accordingly reject Kennesaw's request. Moreover, because this appeal was not frivolous, we reject Kennesaw's request for a fee award under Fed.R.App.P. 38. See Operating Engineers, 911 F.2d at 1356 ("An appeal is considered frivolous when the result is obvious or the appellant's arguments of error are wholly without merit.") (quotations omitted).
 
 IV. CONCLUSION
 
 36
 We affirm the district court's award of attorney's fees to Kennesaw. We reverse the district court's denial of CMA's motion to quash the writ of execution, and remand the case to the district court with instructions to quash the writ of execution. Each party will bear its own costs and fees in this court.
 
 
 37
 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 
 BOOCHEVER, Circuit Judge, dissenting:
 
 38
 Because I believe ERISA does not authorize an award of attorney's fees to Kennesaw, I respectfully dissent.
 
 
 39
 Section 1132(g)(1) of ERISA provides: "In any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. Sec. 1132(g)(1) (1988). The plain language of the statute clearly limits awards to actions brought by a participant, beneficiary, or fiduciary. CMA is none of these. The words of the statute thus do not justify awarding fees to Kennesaw.
 
 
 40
 Nothing in the legislative history of ERISA suggests an intent to authorize fee awards beyond what the plain language allows. The enforcement provisions of ERISA were
 
 
 41
 designed specifically to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of [ERISA].... The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law or recovery of benefits due to participants.
 
 
 42
 S.Rep. No. 127, 93d Cong., 2d Sess. 35, reprinted in 1974 U.S.C.C.A.N. 4639, 4838, 4871. The few references to the attorney's fees provision state that fees are available in actions by participants or beneficiaries. H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess. 327, reprinted in 1974 U.S.C.C.A.N. 5038, 5107; S.Rep. No. 383, 93d Cong., 2d Sess. 106, reprinted in 1974 U.S.C.C.A.N. 4890, 4989; H.R.Rep. No. 533, 93d Cong., 2d Sess. 21, reprinted in 1974 U.S.C.C.A.N. 4639, 4659. No mention is made of the wider equitable goals cited by the majority.
 
 
 43
 This court has previously relied on the plain language of Sec. 1132(g)(1) in refusing to award fees when the action was not "by" an ERISA participant, beneficiary, or fiduciary. In M & R Investment Co. v. Fitzsimmons, 685 F.2d 283, 288 (9th Cir.1982), we affirmed the district court's denial of attorney's fees to ERISA trustees who successfully defended an action by an investment company alleging breach of a loan contract. We agreed with the district court that the "action by M & R was not 'by' a participant, beneficiary, or fiduciary, and therefore ... the attorneys' fees section does not apply." Id. See also Saladino v. I.L.G.W.U. Nat'l Retirement Fund, 754 F.2d 473, 477 (2d Cir.1985) (successful plaintiff who was not ERISA "participant" not entitled to attorney's fees under Sec. 1132(g)(1)). The same reasoning should apply in this case.
 
 
 44
 Further, just two years ago we reversed an award of ERISA attorney's fees to a third-party defendant insurer because the insurer was not an ERISA participant, beneficiary, or fiduciary. The plaintiff in Downey Community Hospital v. Wilson, 977 F.2d 470 (9th Cir.1992) was an ERISA plan employer who sued several defendants who had provided health care under the plan. The employer prevailed and won attorney's fees. We affirmed the fee award to the employer, apparently because it brought the action as an ERISA fiduciary and administrator. Id. at 474 (remanding for recalculation of the amount). But we reversed the award of fees to the third-party insurer defendant, who had prevailed along with the employer. We held that the insurer defendant "does not qualify as a prevailing party under ERISA because it is neither a participant, fiduciary, nor a beneficiary of the plan." Id. at 475. In doing so, we read the purpose and terms of the statute to authorize fee awards only to a prevailing party who is an ERISA participant, fiduciary, or beneficiary. The defendant in Downey was outside those categories and thus could not recover, even though the action was brought by an ERISA fiduciary. Id.
 
 
 45
 In my view, these precedents require that we reverse the attorney's fee award for two reasons. First, the action was not brought "by" an ERISA participant, beneficiary, or fiduciary. As we wrote in M & R Investment, "[t]here is no ambiguity in the wording of the section [1132(g)(1) ]. Perhaps if Congress had considered the situation we are faced with, it might have written the statute differently. However, it did not, and it is not within our power to amend the clear language of the statute." 685 F.2d at 288. We reaffirmed that reliance on plain language in Downey, 977 F.2d at 474 ("There is no ambiguity in the wording of the statute.").
 
 
 46
 Second, as the district court emphasized in its findings of fact [ER 65], Kennesaw, the prevailing defendant, itself is neither a participant, beneficiary, nor fiduciary under ERISA. Downey forbids a fee award to a non-ERISA defendant such as Kennesaw. 977 F.2d at 475.
 
 
 47
 The majority awards ERISA attorney fees to a prevailing non-ERISA defendant in an action brought by a non-ERISA party. Recognizing that the award is not authorized by the plain language of Sec. 1132(g)(1), the opinion attempts to distinguish M & R Investment and Downey by pointing out that CMA held itself out to be an ERISA fiduciary, implying that the statute reaches actions brought by parties merely claiming a relation to ERISA. Section 1132(g)(1) simply does not allow such an interpretation, and our cases reinforce the statute's narrow reach.
 
 
 48
 Because I believe the district court was not authorized to consider an ERISA fee award in this case, I would not decide whether the district court abused its discretion in deciding to award fees under the factors set out in Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir.1980).
 
 
 49
 CMA's litigation posture, however, certainly was not above suspicion. There are other ways, not limited to litigants bringing ERISA actions, to discourage protracted lawsuits based on groundless claims. The majority's deterrence goal could be better served by an award of attorney fees to Kennesaw on the ground that CMA made its ERISA claims in bad faith. See Beaudry Motor Co. v. Abko Properties, Inc., 780 F.2d 751, 756 (9th Cir.1986) (award of fees to prevailing party proper if court finds losing party acted in bad faith), cert. denied, 479 U.S. 825, 107 S.Ct. 100, 93 L.Ed.2d 51 (1986). I would remand the fee award for reconsideration under the bad faith exception to the American rule, which otherwise requires that each party bear its own fees.
 
 
 
 [1]
 When this case went to trial, Fed.R.Civ.P. 41(b) authorized a district court to terminate a non-jury action at the conclusion of the plaintiff's presentation of evidence if the plaintiff had shown no right to relief. Effective December 1, 1991, Rule 41 was amended by deleting that provision and replacing it with a similar provision in Fed.R.Civ.P. 52(c)
 
 
 [2]
 Although a pretrial conference order appears as an entry on the district court's docket sheet, the original document is missing from the district court record
 
 
 [3]
 We note that a finding of bad faith is not a prerequisite to a fee award against an ERISA plaintiff. See Russell, 726 F.2d at 1415-16 (rejecting ERISA plaintiff's argument that attorney's fees should be awarded to a prevailing defendant only if there is a finding of bad faith on the part of the plaintiff). Nevertheless, because it is a relevant factor, Hummell, 634 F.2d at 453, we address CMA's argument
 
 
 [4]
 We reject CMA's argument that it cannot be liable for attorney's fees because its trial counsel was solely responsible for mishandling the case. Section 1132(g)(1) authorizes the court to award attorney's fees against either party. CMA cannot free itself from all responsibility for litigation so long pursued
 
 
 [5]
 These criteria are: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976)
 
 
 [6]
 Kennesaw also relies on Garris v. Mitchell, 7 Cal.App.2d 430, 46 P.2d 225 (1935), to support its argument that the writ of execution was properly granted. Kennesaw's reliance on Garris is misplaced. In Garris, the state court appointed the California Insurance Commissioner to serve as a receiver for an insolvent insurance company. 46 P.2d at 226. The plaintiffs subsequently obtained permission from the state court to sue the Commissioner for fraud. Id. The Court of Appeal allowed the suit to proceed, holding that the Commissioner was not entitled to immunity for his own fraudulent acts. Id., at 227-28. Thus, Garris supports our conclusion that Kennesaw must present its claim against CMA to the state court in which the receivership proceeding is pending