FUENTES, Circuit Judge.
I write separately in this case because, while I concur in the judgment, I believe that Plaintiff La Fata and the other class members experienced a termination of employment under the RE & C Termination of Employment Plan as a result of the merger of RE & C into Morrison Knudsen. Although the majority addresses only whether the sale of RE & C stock, standing alone, terminated La Fata, I believe it is also important to decide whether La Fata was terminated as a result of the merger. La Fata does not assume, but rather attempts to show, that Raytheon’s actions in the course of the RE & C stock sale anticipated the subsequent merger, and he further argues that its intentions with respect to the merger created liability for it. While I agree with the majority that he fails ultimately to establish Raytheon’s liability, I agree with La Fata, and the District Court, that the record supports a finding that class members were terminated under the terms of their severance policy.
I agree with the majority that a sale of stock will not normally disrupt existing contractual relationships. See NLRB v. Rockwood Energy & Mineral Corp., 942 F.2d 169, 173-74 (3d Cir.1991). But an existing relationship may be severed — i.e., an employee terminated — when the terms of an employment contract are in fact substantially altered.[6]
Our Court has held that “severance pay benefits may be intended to compensate an employee for the possibility of lower salary and benefits even when his or her employment continues without interruption with a new employer.” Kotrosits v. GATX Corp. Non-contributory Pension Plan for Salaried Employees, 970 F.2d 1165, 1171 (3d Cir.1992); see also Ulmer v. Harsco Corp., 884 F.2d 98, 101, 104 (3d Cir.1989) (holding severance was due where “terms of [plaintiffs’] employment were significantly worsened” under new owner). Thus, the term “termination” in a severance policy should be construed to cover not only those employees who experience a total loss of employment, but also employees who experience a substantial reduction in direct or indirect compensation.[7] An employee who *265 experiences a radical change in the terms of employment is effectively terminated from the previous position; the fact that the employee may be offered a new position, whether by the legal successor to a previous employer or an altogether new company, does not affect the employee’s interest in compensation under a severance plan. By contrast, where compensation remains essentially the same under a new owner, employees are not terminated and courts have not awarded severance pay. See Schroeder v. Phillips Petroleum Co., 17 F.3d 1147, 1148 (8th Cir.1994) (“[T]he sale or discontinuance of a business does not entitle employees to benefits under a severance plan if a new or successor employer continues their employment without interruption under substantially identical terms and conditions.”).
Whether employees are terminated upon the sale of a business, for severance purposes, does not hinge on whether the sale is structured as a sale of stock or a sale of assets. RE & C’s severance policy, like other severance policies, was intended to protect RE & C employees “from a sudden change in the employment relationship.” John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 549, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) (discussing National Labor Relations Act). When a new employer effects such a sudden change, employees experience “termination” as the term is commonly used in severance policies. That is exactly what occurred here.
A factfinder could infer, for reasons outlined by the District Court, that a termination occurred here. First, a Raytheon employee stock option report indicated that those options were terminated for “former RE & C employees” on July 7, 2000, the day of the stock sale. In all but one case, unvested stock options expired on the closing date. Second, under the terms of the Morrison Knudsen 401(k) plan, years of service for RE & C employees were calculated using July 8, 2000 as the first day of employment. Third, in internal communications, Raytheon and Morrison Knudsen referred to class members as “terminated” and as “former RE & C employees,” which may suggest that these employees were also “terminated” as the term was used in the severance policy.
Most important, former RE & C employees experienced a number of benefit changes. First, the defined benefit pension plan provided by RE & C was terminated. Second, former RE & C employees could no longer participate in the Raytheon Scholars program. Third, unlike the Raytheon plan in which former RE & C employees had participated, the 401(k) plan offered by Morrison Knudsen did not offer employer stock as an investment option. Fourth, the Morrison Knudsen 401(k) plan, unlike the Raytheon plan, did not allow for after-tax contributions. Fifth, unlike the Raytheon 401(k) plan, under which employer contributions vested immediately, employer-matching contributions in the Morrison Knudsen plan vested over a five-year period. Based on all of this evidence, the District Court found, and I agree, that plaintiffs have created a genuine factual dispute as to whether they had been terminated.
Notably, not every termination will trigger severance pay under the Plan. Under Part X of the Severance Policy, La Fata was entitled to benefits only if his termination resulted from a “reorganization.”[8] Again, I agree with the District Court that La Fata’s terms of employment were altered “due to a change in Company structure.” Section IV(B)(3) of the Severance Policy (defining “reorganization”). The various changes that took place were all *266 directly related to the merger of RE & C into Morrison Knudsen, which Morrison Knudsen and RE & G themselves referred to as a “reorganization.” RE & C’s eight divisions shrank to five under Washington Group and all but one division head was replaced. The merger was clearly a “reorganization” that qualified La Fata for severance if it resulted in termination.
In my view, if plaintiffs are able to show that they experienced a substantial change in the terms of their employment as a result of a reorganization at RE & C, they will have demonstrated eligibility for severance. However, because the facts alleged by La Fata do not suggest sufficient evidence to establish Raytheon’s liability for severance, I concur in the judgment of the Court.

. Termination in the context of at-will employment, as in this case, does not concern termination of an employment contract per se. Rather, termination here implies a "new” contract with substantially different terms. At least two other circuits have indicated that termination may take place upon a change in ownership. See Harris v. Pullman Standard, Inc., 809 F.2d 1495, 1498 (11th Cir.1987) (holding that employees were entitled to severance payments under benefits plan which awarded them "for all involuntary terminations”); Blau v. Del Monte Corp., 748 F.2d 1348, 1354-55 (9th Cir.1984) (holding that plan which provides for severance when jobs are "eliminated” and "alternative employment opportunities are unavailable within the Corporation” "does not condition receipt of severance benefits upon elimination of positions from the face of the earth,” "subsequent unemployment,” or "failure of a successor corporation to offer employees jobs after their employment with Del Monte ceases”) (emphasis omitted), abrogated on other grounds as recognized in Dytrt v. Mountain States Tel. & Tel. Co., 921 F.2d 889, 894 n. 4 (9th Cir.1990).

. If termination were construed otherwise, employers could always avoid severance by simply eliminating benefits and offering an employee minimum wage, with the expectation that the employee would "voluntarily” leave the company. Such a nonsensical reading of the severance policy would defeat its purpose entirely.

. La Fata does not contend he was terminated due to a "layoff” or "release.”